666 F.2d 69
 UNITED STATES of America, Appellee,
v.
Raymond Thomas LURZ, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Charles Daniel MAGILL, Appellant.
UNITED STATES of America, Appellee,
v.
Michael R. STEEDMAN, Appellant.
UNITED STATES of America, Appellee,
v.
Mark Michael NOVAK, Appellant.
 Nos. 80-5024, 80-5032, 80-5037 and 80-5048.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1981.
Decided Dec. 10, 1981.
 
 Daniel J. Mellin, Richard W. Winelander, Ransom J. Davis, Baltimore, Md. (Michael E. Marr, Marr & Bennett, P.A., Baltimore, Md., B. Edward McClellan, Laurel, Md., Melvin J. Kodenski, Baltimore, Md., on brief), for appellants.
 Glenn L. Cook, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., John A. MacColl, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.
 Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 Two counts in a criminal case brought in the United States District Court for the District of Maryland asserting drug violations here generate no less than eleven issues requiring resolution. Count I charged each of the original twenty-three defendants with conspiracy to manufacture, distribute, and possess phencyclidine (PCP), an offense under 21 U.S.C. §§ 841(a)(1) and 846. Count II charged two of the defendants, Raymond Thomas Lurz, Jr. and Michael Roy Steedman, with conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848.
 
 
 2
 Following a trial of ten of the defendants, guilty verdicts were returned under Count I against Lurz and Steedman, and two other defendants, also parties to the present appeal, Mark Michael Novak and Charles Daniel Magill, as well as against three other defendants not parties to the appeal. Verdicts of guilty were also rendered under Count II against Lurz and Steedman.
 
 
 3
 In the course of sentencing, Lurz received thirty years on Count II, to be served concurrently with state and federal sentences imposed on him. He received a five year concurrent sentence under Count I.[1] Steedman was sentenced to five years under Count I, with a concurrent sentence of ten years under Count II.[2] Magill and Novak each received three year sentences under Count I.
 
 
 4
 Evidence at trial permitted a finding that, from the spring of 1977 to the end of March, 1978, Lurz and Steedman were leaders of, and suppliers to, a network of wholesale PCP distributors in the vicinity of Baltimore, Maryland. The testimony was also ample to connect Novak and Magill with the distribution in Maryland.
 
 
 5
 On March 31, 1978, Lurz, while in Maryland, bought for $5,000 from a Drug Enforcement Administration ("DEA") agent phenyl-magnesium bromide ("PMB") (a PCP precursor), and promised in return to deliver to the DEA agent one gallon of liquid PCP. Subsequent surveillance revealed meetings between Lurz and Steedman, one in particular just before the departure of Lurz to Florida to engage in PCP manufacture. At Lurz's arrest on April 25, 1978 in Florida for manufacturing PCP, forty-three pounds of crystal PCC, a chemical produced prior to PCP, were seized. The forty-three pounds could have been converted to 5,000 pounds of PCP flakes, having a wholesale value on the illicit drug market of about $6,500,000.
 
 
 6
 Under an indictment returned in the United States District Court for the Middle District of Florida, a year before his conviction in the case pending before us, Lurz was found guilty under § 846 of conspiracy to manufacture, and of two other offenses not pertinent here, and sentenced to three consecutive five year terms. United States v. Lurz, 611 F.2d 621 (5th Cir. 1980) (per curiam).
 
 Issue No. 1-Lurz's double jeopardy claim
 
 7
 The primary assertion of Lurz is one of double jeopardy. Lurz's contention is that there was but one continuing conspiracy to manufacture and distribute, not two distinct ones (a) to manufacture and (b) to distribute. Having previously been convicted under § 846 for his Florida activities, the argument runs, he cannot again be convicted of the crime charged in Count I (the Maryland conspiracy) because it is the same crime. The argument would have more force had the manufacture clearly preceded the distribution. However, things were predominantly the other way around. The events comprising the Maryland distribution activities were largely, if not completely, over before the occurrences establishing the behavior of Lurz leading to production of PCP in Florida began. The time span in the Florida indictment was alleged to be March 3, 1978 to April 25, 1978, and the Maryland conspiracy was concluded in early 1978.[3] It was also shown that Lurz and another were, in December 1978, arranging to make PCP in California, an additional fact permitting a finding that the manufacture was separate and distinct from the Maryland distribution activities.
 
 
 8
 The district judge gave careful and repeated consideration (at two pretrial hearings, and again at trial, at the end of the government's case) to the question of whether there was one or were two conspiracies. He allowed Lurz full opportunity to develop the record and to present arguments for his position. We are satisfied that the determination that there were two independent conspiracies was not clearly erroneous. Preparation and distribution could, of course, be part of a single integrated operation. Viewed as an abstraction, it is no less likely, however, that a principal in the operation, here Lurz, could limit the distribution ring participants to disposition of PCP, while making other arrangements with other persons independent of the distributors for acquisition of PCP.
 
 
 9
 While prosecution for conspiracy to commit two crimes, based on proof of but a single conspiracy, infringes a defendant's protection against being placed twice in jeopardy, Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942), United States v. Castro, 629 F.2d 456 (7th Cir. 1980), the rule does not apply where there are two distinct conspiracies, even though they may involve some of the same participants. E.g., United States v. Papa, 533 F.2d 815, 821-22 (2d Cir. 1976), cert. denied, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976).
 
 
 10
 In Short v. United States, 91 F.2d 614 (4th Cir. 1937), our predecessors found that there was but a single conspiracy. However, the issue is factual and, where the facts are different, so may the conclusion differ.[4] Here it is not incumbent upon us to devote extensive attention to possible distinctions between the "same evidence" test, on the one hand,[5] and the more recent "full study of indictments and evidence" (or "totality of the circumstances") approach, on the other.[6] Under each, the determination that there were separate and distinct conspiracies is fully justified.
 
 
 11
 First, and perhaps as dispositive as anything, is the consideration that the participants in the manufacturing activities were largely different from those involved in distribution. Of the twenty-three defendants named in the distribution related indictment, only Lurz and Novak[7] were also charged in the Florida indictment directed at manufacture. On the other side of the coin, all persons other than Lurz who were implicated in the Florida manufacture, or in steps preparatory thereto, were not accused of distribution: Barry Mullins, Dennis Witt, and Paul Arthur Noll. Nothing indicates any involvement of those three in activities to effect distribution.[8]
 
 
 12
 Second, geographically the two activities were widely separated. The distributorship web was confined to Maryland. Lurz negotiated the PMB purchase in Maryland, but thereafter the PCP manufacture had an exclusively Florida focus.
 
 
 13
 Lurz, nevertheless, purports to find a flaw in the arguments supporting the conclusion of the district judge that there were two distinct conspiracies. The flaw, he contends, leaps to view because the government, for all its pious insistence on the independence of the Maryland distribution and the Florida manufacture, succeeded in getting testimony of the Florida production goings-on before the jury. The contention is clever, and leads to a momentary pause. Nonetheless it fails. Introduction of the Florida evidence came under Count II (continuing criminal enterprise) rather than Count I (conspiracy to distribute).[9] We discuss the propriety of the use of the Florida evidence for that purpose below.
 
 
 14
 Accordingly, we reject the contention that Lurz was exposed to double jeopardy by being prosecuted under Count I a second time for the same crime which had led to his conviction in Florida. He was not tried a second time for a single conspiracy of which the Florida activities were a part. Rather they comprised a separate conspiracy from the one which took place in Maryland.
 
 
 15
 Issue No. 2-Lurz's claim of error in admitting evidence of the Florida conspiracy to prove the continuing criminal enterprise
 
 
 16
 Undeterred, Lurz next argues that, even if the conspiracies were distinct, still the government subjected him to double jeopardy by using evidence of the Florida conspiracy (a crime under § 846), of which he already stood convicted, to prove Count II, the continuing criminal enterprise (a violation of § 848). Verbal logic provides support for Lurz's position. The rule is clear that § 846 is a lesser included offense of § 848. Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Furthermore, a prior conviction of a lesser included offense bars a subsequent conviction for the greater offense. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The government explicitly concedes both propositions in its brief.[10]
 
 
 17
 The contention ignores, however, the variety of elements comprising a continuing criminal enterprise for purposes of § 848. Five elements make up the offense:
 
 
 18
 1) a felony violation of the federal narcotics laws;
 
 
 19
 2) as part of a continuing series of violations;
 
 
 20
 3) in concert with five or more persons;
 
 
 21
 4) for whom the defendant is an organizer or supervisor;
 
 
 22
 5) from which he derives substantial income or resources.
 
 
 23
 The elements are divided in two parts. First, it is necessary to prove the predicate felony violation (element one), and second, the other elements must be proved.[11]
 
 
 24
 The Maryland § 846 conspiracy afforded proof, in the § 848 prosecution, of the felony violation of the federal narcotics laws. Hence, it is a lesser included offense, and it is necessary to vacate one of the sentences imposed as a consequence of his conviction of both counts in the Maryland case.[12] However, the Florida conspiracy, an entirely distinct crime, provided the factual material necessary to prove the other four elements of the continuing criminal enterprise.
 
 
 25
 In extant authority which has found § 846 a lesser included offense of § 848, the very § 846 offense to be merged has been put forth as the predicate violation for the § 848 prosecution.[13] One may not first prove a conspiracy to distribute to establish a § 846 violation, and then move on to convict under § 848 as well, by using the very same conspiracy to distribute for the felony violation of the federal narcotics laws (item one in the five point scheme). In the present case, to the contrary, the Florida indictment is altogether distinct from the Maryland one, and it is used for all the elements of the continuing criminal enterprise other than the predicate felony violation (item one).
 
 
 26
 Had there been no previous conviction of the Florida conspiracy, its facts could clearly have been used to prove a continuing series of violations in concert with five or more persons, as to which Lurz, independently of his Maryland activities, was an organizer or supervisor, and from which he derived substantial income or resources. Any problem which arguably arises grows out of the fact that Lurz was convicted for the Florida conspiracy. We must consider whether the continuing series of violations required by the statute can, as a matter of statutory construction and as a constitutional matter, consist of convictions, as well as of violations for which there were no convictions.
 
 
 27
 A prerequisite of any double jeopardy claim is that the two prosecutions in question be for the "same offense." In order to determine whether two offenses are the same, we do not blindly invoke the Blockburger test, Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Rather, that test applies when it functions better as a means to determine whether or not the legislature intended to punish the offenses cumulatively than any other indicator of congressional intent. However, it is but "a 'rule of statutory construction' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." Albernaz v. United States, 450 U.S. 336, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). See also Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1979).
 
 
 28
 Here, there is no occasion to employ the Blockburger test, for the terms of the statute leave no doubt of the congressional intent. The definition of a continuing criminal enterprise is divided into two parts. First, as one distinct element, a person must violate the federal narcotics laws, and second, as a separate element, the violation must be a part of a continuing series of violations (element two) meeting the other requirements delineated above as elements three through five.[14] The message is clear. The first element is the gravamen of the offense, and the others merely constitute a series of aggravating factors which, when present, require a greater punishment. In the final analysis, § 848 is a variant of recidivist statutes.
 
 
 29
 Thus, there is a crucial difference between using evidence of a prior conviction to prove the first element of a continuing criminal enterprise, which Jeffers forbids, and using it to prove the other elements, which is precisely what Congress intended. To hold that evidence used to obtain a prior conviction different from the predicate federal felony for § 848 purposes cannot be used to prove the defendant's participation in a series of offenses meriting aggravated punishment, where Congress intended otherwise, would be at war with the rationale which has validated recidivist statutes. The Supreme Court has held that a state legislature may, if it wishes, provide that a defendant shall be convicted of the crime of being a recidivist, upon proof of prior convictions. E.g., Rummel v. Estelle, 445 U.S. 263, 268, 100 S.Ct. 1133, 1136, 63 L.Ed.2d 382 (1980); Spencer v. Texas, 385 U.S. 554, 560, 87 S.Ct. 648, 651, 17 L.Ed.2d 606 (1967); Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); Graham v. West Virginia, 224 U.S. 616, 631, 32 S.Ct. 583, 588, 56 L.Ed. 917 (1912). The fact that prior convictions comprise one element of an offense does not offend the double jeopardy clause, as long as the prior convictions are used for the limited purpose, which was legislatively intended, of showing the need for more severe punishment-i.e., to prove items two through five, and not item one.
 
 
 30
 In Lurz's case, the evidence of the Florida conspiracy was relevant to several elements of the continuing criminal enterprise offense. Lurz's meeting with Steedman as Lurz was leaving for Florida was evidence of their joint participation in the continuing criminal enterprise. His transportation of the PMB to Florida was pertinent to show his supervisory or organizational position. His ability to pay $5,000 for PMB was probative of the issue of substantial income from the PCP distribution activities. Finally, all of the evidence of his participation in the Florida conspiracy was probative of the continuing series of violations. Cf. United States v. Papa, supra.
 
 
 31
 We therefore hold that prosecution of Lurz under § 848 was not barred, and that evidence of the Florida conspiracy was properly admitted to prove elements two through five of Count II, the continuing criminal enterprise.
 
 
 32
 Issue No. 3-Lurz's demand for separate trials for Count I and Count II
 
 
 33
 Lurz asserts, in a blanket way, prejudice from the introduction of the evidence of the Florida conspiracy and the refusal of the district judge to grant a severance. Apparently Lurz argues not that he should have been tried separately from the other defendants, but rather that he was entitled to separate trials for the two crimes with which he was charged.
 
 
 34
 Normally, joinder of offenses is proper if they
 
 
 35
 are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 
 
 36
 Fed.R.Crim.P. 8(a). Offenses which are properly joined may be severed under Fed.R.Crim.P. 14 if the defendant makes a substantial showing of prejudice. The granting of severance is committed to the discretion of the district court. See, e.g., United States v. Catena, 500 F.2d 1319, 1326 (3d Cir. 1974), cert. denied, 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974); United States v. Clayton, 450 F.2d 16, 18 (1st Cir. 1971), cert. denied, 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972).
 
 
 37
 There was more than ample similarity between the conspiracy and continuing criminal enterprise counts to justify their joinder at the outset under Rule 8(a). The district court concluded that Lurz did not make a sufficient showing of prejudice to justify severance. We cannot conclude that Lurz made a showing of prejudice sufficiently persuasive to require us to find the district court's exercise of its discretion unreasonable.
 
 
 38
 Issue No. 4-Lurz's attack on counsel's representation as ineffective
 
 
 39
 The contention of Lurz that he was denied effective assistance of counsel is at best premature. A party anxious to avoid the consequences of conviction may well be impatient of the view frequently expressed by the courts that, without hearing counsel's side of the story, especially as it relates to tactical confrontations with which he or she had to deal, it is impossible to make a reasoned judgment as to whether or not representation was ineffectual. See, e.g., United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir. 1970); United States v. Welton, 439 F.2d 824, 826 (2d Cir. 1971). Nevertheless, it is a practical fact of everyday life. Complaints about counsel's handling of the trial tend to sound like second-guessing after the event. On the record before us, which is necessarily incomplete on such a collateral matter, we would be inclined to the view that trial counsel's advice and performance were "within the range of competence demanded from attorneys in criminal cases." Marzullo v. Maryland, 561 F.2d 540, 543 (4th Cir. 1977), cert. denied, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978). It is much more in Lurz's interests that we decline to address the question of competency of counsel on the record as it now stands.
 
 
 40
 By proceeding under 28 U.S.C. § 2255, Lurz will be able to elaborate any arguments on the point, and establish an adequate record for resolution of the question. At the same time, counsel will be, as indeed he should be, afforded adequate opportunity to explain the reasons surrounding the action or inaction to which Lurz takes exception. Such an explanation, and its sufficiency or insufficiency, would be cardinal factors in our passing on the claim.
 
 
 41
 Issue No. 5-Supposed vagueness of indictment, proof and jury instructions for Count II
 
 
 42
 The assertions of Lurz and Steedman that Count II, charging violations of § 848, suffered from vagueness in the language of the indictment, focus of the proof, and precision of the jury instructions need not long detain us. The indictment, phrased in the statutory terminology, sufficed. United States v. Sperling, 506 F.2d 1323, 1344 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). The jury instructions, read as a whole, adequately proclaim that felony violations are crucial ingredients of the continuing criminal enterprise offense. The existence of more than five subordinate participants was abundantly demonstrated by the evidence.
 
 
 43
 It is simply incorrect for Lurz and Steedman to contend that a minimum of three substantive convictions is required to establish a § 848 violation. United States v. Barnes, 604 F.2d 121 (2d Cir. 1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); United States v. Johnson, 575 F.2d 1347 (5th Cir. 1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); United States v. Collier, 358 F.Supp. 1351, 1355 (E.D.Mich.1973), affirmed, 493 F.2d 327 (6th Cir. 1974), cert. denied, 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974); United States v. Bergdoll, 412 F.Supp. 1308, 1318 (D.Del.1976).
 
 
 44
 As for Steedman's complaint that his name was at times used by the judge in charging the jury conjunctively with that of Lurz, it is not persuasive when the jury instructions are evaluated as a whole. The instructions made clear that separate verdicts were required under Count II, one for Lurz and one for Steedman, and that each verdict had to be independently supported by the evidence.
 
 
 45
 Issue No. 6-Novak's assertion of defenses of double jeopardy and collateral estoppel
 
 
 46
 Novak's double jeopardy contention stems from the dismissal against him of the Florida indictment. The disposition we have made respecting Lurz's similar claim fully disposes of that argument. Lurz was convicted and sentenced in Florida, yet trial in Maryland on Count I, addressed to a distinctly separate conspiracy, was not barred. In all events, Novak was dismissed in the Florida case on grounds of insufficiency of the evidence before the jury was sworn, and therefore jeopardy did not attach in the Florida proceeding. Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).
 
 
 47
 The separate character of the Maryland conspiracy, on the one hand, and the Florida conspiracy, on the other, answers a related claim by Novak of collateral estoppel. The doctrine of collateral estoppel applies when an issue was determined in a prior adjudication. See, e.g., Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); United States v. Wise, 550 F.2d 1180, 1187-88 (9th Cir. 1977). The determination that the evidence against Novak in the Florida case was insufficient had no preclusive effect on the distinct and independent charge in Maryland.
 
 
 48
 Issue No. 7-Novak's claim of a Jencks Act violation
 
 
 49
 Novak next seeks solace in a proposition that, as to him, the Jencks Act, 18 U.S.C. § 3500, was violated. He was not supplied with the testimony of Elmer Russell Jones, a principal government turncoat witness, given at a pretrial hearing in the Florida case. Novak claims consequent disadvantage both as to impeachment of Jones in his testimony in the Maryland case, and as to a possible buttressing of his double jeopardy contention.
 
 
 50
 The unavailability of the transcript of Jones' Florida testimony was attributable to the court reporter, who was not an agent of the government for Jencks Act purposes. 18 U.S.C. § 3500(b) and (e)(2). See United States v. Baker, 358 F.2d 18, 20 (7th Cir. 1966), cert. denied, 385 U.S. 869, 87 S.Ct. 135, 17 L.Ed.2d 96 (1966). Cf. United States v. Harris, 542 F.2d 1283, 1293-94 (7th Cir. 1976), cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); United States v. Munroe, 421 F.2d 644, 645 (5th Cir. 1970), cert. denied, 400 U.S. 851, 91 S.Ct. 79, 27 L.Ed.2d 89 (1970). The charge of egregious default by the prosecutors is simply not sustained by the record.
 
 
 51
 Other considerations militating against the Jencks Act assertions are:
 
 
 52
 1) Jones' testimony in Florida, when ultimately transcribed, was fully consistent with his Maryland testimony. No specific inconsistencies have been identified by Novak.
 
 
 53
 2) Novak had been supplied, prior to trial, with Jones' grand jury testimony, DEA debriefings of Jones, and his testimony in a state court prosecution of Paul Sprinkle, one of those engaged in the distribution conspiracy with Jones.
 
 
 54
 Issue No. 8-Steedman's claim of insufficiency of the evidence under Count II
 
 
 55
 The claim of Steedman that, as to him, the evidence did not suffice to meet the five requirements of 21 U.S.C. § 848 is patently frivolous. The testimony was amply adequate to sustain a jury finding that he was repeatedly engaged, as a leader, with his partner in a garage and towing business, Lurz, in transactions which together satisfied the numerosity requirements as to series of violations and quantity of co-participants and the substantiality requirement as to income.
 
 
 56
 Steedman additionally makes the novel assertion that, inasmuch as Lurz was even more heavily involved than he, and § 848 is, in informal parlance, described as the "kingpin" statute, the part in the conspiracy as kingpin was already occupied by Lurz, leaving no space for Steedman. That might be considered the musical chairs defense.
 
 
 57
 A cursory review of the statute suffices to establish that there may be a kingpin and not solely the kingpin. The definition of the crime speaks in terms of "any person," § 848(a)(1), and of "a person," § 848(b). Whatever the statute's popular name, there is no indication that it can be applied to only one dominant participant in a conspiracy.
 
 
 58
 Issue No. 9-Sufficiency of the evidence to support the conviction of Magill
 
 
 59
 Magill appeals on the grounds of insufficiency of the evidence against him under Count I. However, the record discloses:
 
 
 60
 1) Magill attended a meeting at his house with Jones, Lurz and Paul Sprinkle, at which he told Lurz he was out of PCP, and asked when Lurz meant to get more. Magill paid money to Lurz and Lurz promised Magill another ten pounds of PCP.
 
 
 61
 2) Magill was known as "Tuffy." The price of PCP was established at trial as $1300.00 per pound. A PCP customer list seized from Lurz referred to Tuffy with a notation of "2" and $2600.00.
 
 
 62
 3) PCP was distributable in quantities as small as one ounce, and possession of so large a quantity as two pounds permitted an inference of an intent to distribute. United States v. Webster, 639 F.2d 174, 188 (4th Cir. 1981); United States v. Rodriguez, 612 F.2d 906, 908 (5th Cir. 1980).
 
 
 63
 4) Telephone toll records disclosed numerous calls between the Lurz residence and the Magill residence. Magill was listed in Lurz's address books.
 
 
 64
 Thus the evidence against Magill was enough to sustain the conviction.
 
 
 65
 Issue No. 10-Severance demands of Steedman, Novak and Magill
 
 
 66
 Steedman, Novak and Magill, regarding Lurz as bad news as codefendants go, seek new trials because of the denial of their requested severances in reliance on Fed.R.Crim.P. 14. The district judge reserved judgment on the severance motions until the close of the government's case. He then concluded that the evidence was not unduly prejudicial as to any defendant and that he could and would safeguard each defendant from a determination of guilt by association by appropriate instructions.
 
 
 67
 Severance of defendants, like severance of offenses, is a matter of trial court discretion. Fed.R.Crim.P. 14. E.g., Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. McLaurin, 557 F.2d 1064, 1075 (5th Cir. 1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978); United States v. Frazier, 394 F.2d 258 (4th Cir. 1968), cert. denied, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968). Judicial economy favors joinder of defendants for trial of charges growing out of the same events. United States v. Mandel, 591 F.2d 1347, 1371 (4th Cir. 1979), vacated by an evenly divided court, 602 F.2d 653 (1979), rehearing denied, 609 F.2d 1076 (1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); United States v. Shuford, 454 F.2d 772, 775-76 (4th Cir. 1971); United States v. Boswell, 372 F.2d 781, 784 (4th Cir. 1967), cert. denied, 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 972 (1967). Joinder is appropriate in conspiracy cases. United States v. Bryant, 364 F.2d 598, 601-03 (4th Cir. 1966). For each case, the facts peculiar to it are controlling. E.g., United States v. Truslow, 530 F.2d 257, 261 (4th Cir. 1975). We are satisfied that the trial judge properly assessed the facts and that the careful instructions given by him insulated each defendant from the prejudice he advances on appeal as a grounds for severance. Ultimately it is a question, here answerable in the affirmative, whether, on the actual proof the jury can compartmentalize the evidence and return a fair verdict. See United States v. Brady, 579 F.2d 1121, 1127-28 (9th Cir. 1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).
 
 
 68
 Steedman's related contention that, under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the admission of statements by his alleged coconspirator, Lurz, violated the Confrontation Clause, fails. The Lurz statements came in under F.R.E. 801(d)(2)(E) as exceptions to the hearsay rule. So admitted, they do not violate the confrontation clause. Dutton v. Evans, 400 U.S. 74, 82-86, 91 S.Ct. 210, 216-218, 27 L.Ed.2d 213 (1970); United States v. Papia, 560 F.2d 827, 836 n.3 (7th Cir. 1977); United States v. McManus, 560 F.2d 747, 750 (6th Cir. 1977), cert. denied, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978); United States v. Swainson, 548 F.2d 657, 661 (6th Cir. 1977), cert. denied, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977). See also United States v. Nixon, 418 U.S. 683, 700-01, 94 S.Ct. 3090, 3103-3104, 41 L.Ed.2d 1039 (1974). Cf. United States v. Truslow, 530 F.2d 257 (4th Cir. 1975).
 
 
 69
 Issue No. 11-Count I as a lesser included offense of Count II
 
 
 70
 The government fully concedes in its Brief that the § 846 charge under Count I is a lesser included offense of the § 848 violation charged in Count II. Accordingly, the convictions of Lurz and Steedman under Count I are reversed, and the five year consecutive sentence of Lurz and the five year sentence of Steedman are vacated. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Otherwise, and except as provided in footnote 2, supra, the judgments are affirmed.
 
 
 
 [1]
 Concurrent as to federal convictions, it was consecutive as to any state sentences
 
 
 [2]
 Should the special parole term of ten years as to Count I not already have been voided by the district court, we remand to that extent with directions that such action be taken in light of Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)
 
 
 [3]
 The Maryland indictment alleged the period covering the Spring of 1977 until May 23, 1979. Thus, viewing the pleadings alone, there is a complete overlap. However, the evidence adduced on the conspiracy to distribute charge actually brought things no further forward than early 1978, March 30, 1978 being the latest date. By then the dealings of other distributors with Lurz had come to an end
 
 
 [4]
 For cases finding separate conspiracies see: United States v. De Fillipo, 590 F.2d 1228 (2d Cir. 1979), cert. denied, 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979); United States v. Martinez, 562 F.2d 633 (10th Cir. 1977); United States v. Ingman, 541 F.2d 1329 (9th Cir. 1976); United States v. Croucher, 532 F.2d 1042 (5th Cir. 1976); United States v. Bommarito, 524 F.2d 140 (2d Cir. 1975); Arnold v. United States, 336 F.2d 347 (9th Cir. 1964), cert. denied, 380 U.S. 982, 85 S.Ct. 1348, 14 L.Ed.2d 275 (1965); United States v. Nakonechni, 451 F.Supp. 547 (M.D.Pa.1978), aff'd, 601 F.2d 577 (3d Cir. 1979)
 
 
 [5]
 See United States v. Mallah, 503 F.2d 971 (2d Cir. 1974), cert. denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975)
 
 
 [6]
 See United States v. Tercero, 580 F.2d 312 (8th Cir. 1978). Cf. United States v. Papa, supra
 
 
 [7]
 Novak was dismissed in Florida after a pretrial hearing, on the ground that there was insufficient evidence linking him to the crime charged in the Florida case. Consequently, the only person appearing to participate in what the government contended were two separate conspiracies was Lurz
 
 
 [8]
 There has been no contention of deliberate tailoring by the government so as to suppress evidence of manufacture by the 23 Maryland defendants, or to eliminate proof of distribution conduct by Lurz's codefendants in Florida
 
 
 [9]
 Although Count I of the indictment included manufacture among the activities in which the defendants allegedly conspired to engage, proof as to Count I was restricted to distribution
 
 
 [10]
 Government brief at 30:
 The government concedes, as it must, that Section 846 is a lesser included offense of Section 848. The government also recognizes the well-settled principle that the double jeopardy clause prohibits the trial of a defendant on a greater offense after he has been convicted of a lesser included offense. (Citations omitted.)
 
 
 [11]
 21 U.S.C. § 848(b):
 For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if-
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter-
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 
 
 [12]
 For a discussion of that separate point, see issue No. 11, p. 81 infra
 
 
 [13]
 Jeffers v. United States, supra (defendant convicted of a § 846 charge, and then a § 848 charge stemming from the same conspiracy); United States v. Stricklin, 591 F.2d 1112 (5th Cir. 1979), cert. denied, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979) (prior § 846 violation, of which defendant had been convicted, was the predicate violation of the subsequent § 848 conviction)
 
 
 [14]
 See n.11, supra