7 F.3d 227
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Felix D. DIAZ, a/k/a Papo, Defendant-Appellant.
 No. 92-5130.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: August 26, 1993.
Decided: September 15, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-91-322-A)
 Felix D. Diaz, Appellant Pro Se.
 Peter Rolf Maier, United States Department of Justice, Washington, D.C.; David Alan Ring, Office of the United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Felix D. Diaz was convicted by a jury of conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine, 21 U.S.C.A. § 846 (West Supp. 1993), and of possession with intent to distribute cocaine, 21 U.S.C.A. § 841 (West 1981 & Supp. 1993). He appeals his conviction and sentence. We affirm.
 
 
 2
 Proceeding pro se on appeal, Diaz alleges that his appointed trial counsel was ineffective in representing him during his trial and sentencing. Unless ineffectiveness is apparent on the face of the record, which is not the case here, claims of ineffective assistance are more properly considered in a motion under 28 U.S.C.s 2255 (1988), not on direct appeal. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3717 (U.S. 1992); United States v. Lurz, 666 F.2d 69, 78 (4th Cir. 1981), cert. denied, 459 U.S. 843 (1982). Therefore, we do not reach these claims. Diaz also contends that the district court erred in failing to appoint him new counsel after the first sentencing hearing was continued. At the beginning of the second hearing, however, Diaz withdrew his motion for new counsel and informed the district court he was satisfied with his attorney's representation. Under these circumstances, the district court did not abuse its discretion by not appointing new counsel.
 
 
 3
 We further find that the district court did not abuse its discretion by denying a continuance to allow defense counsel to locate and interview three confidential informants after the government had concluded its case. Neither at trial nor on appeal has Diaz made a showing that the informants would provide testimony favorable to his defense. The denial of a continuance for further investigation in this circumstance was not arbitrary. United States v. Sellers, 658 F.2d 230 (4th Cir. 1981).
 
 
 4
 Diaz also argues that the district court should have continued the trial to allow more pre-trial preparation. While the parties had been unable to secure a ruling on their pre-trial motions during the scheduled motions hearing, the district court judge who conducted the trial heard all pending motions before the beginning of the trial. Neither party requested a continuance at that point. We find no error in the district court's failure to continue trial sua sponte. Defense counsel initially complained that certain discovery materials had been provided late; however, the court's discussion with counsel established that discovery was completed five days before trial as agreed, except for materials the government received at the last minute from the drug task force agents, which was immediately provided to the defense. There is no indication that the government acted in bad faith, or that Diaz's defense was prejudiced.
 
 
 5
 Of the defendants charged in the conspiracy, only Diaz elected to go to trial.[1] Taken in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), the evidence showed that Diaz had participated with the other conspirators in a sale of approximately one ounce of cocaine to undercover officer Jackie Pagan, distributed one gram of cocaine to undercover officer William Rowley on July 9, 1991, as a sample of the quality of cocaine he would deliver, negotiated for future sales of up to four kilograms of cocaine to Rowley, and helped arrange for the delivery of 800 grams of cocaine to Rowley. Diaz told Rowley he went by the nickname "Papo." After a third undercover officer bought cocaine from codefendants Acosta, Abreu, and Quesada, Acosta gave him a pager number to use when he wanted more cocaine and told that one of the people he could ask for was "Papo." This evidence was sufficient for the jury to find that Diaz had participated in the conspiracy.
 
 
 6
 Diaz contends on appeal that the district court wrongly calculated his sentence using five kilograms of cocaine. United States Sentencing Commission, Guidelines Manual, § 2D1.1 (Nov. 1991). He argues that his sentence calculation should have been based solely on the one gram of cocaine he distributed to Rowley because he and Schaefer intended to take Rowley's money for the cocaine they negotiated without making delivery. He alleges that Schaefer devised the plan to defraud Rowley and created the price list for multi-kilogram amounts which Diaz showed to Rowley, while Diaz himself barely knew what was going on because his English was not good. We review the district court's determination of the amount of drug attributable to Diaz under the clearly erroneous standard. United States v. Roberts, 881 F.2d 95 (4th Cir. 1989).
 
 
 7
 In the sentencing proceeding, the district court discredited Diaz's post-arrest statement that he intended to defraud Rowley. The district court previously had found, during the trial, that Diaz had sufficient command of English to understand Miranda[2] warnings given in English at his arrest; this finding was based on Agent Rowley's testimony that on July 9 it was Diaz who conducted the negotiation with him, though Schaefer was present and translated when necessary, and that Diaz was able to communicate adequately with him in English in all their dealings. We note that, rather than being defrauded, Rowley was able to purchase nearly a kilogram of cocaine through Diaz.
 
 
 8
 Negotiated amounts are not properly used to calculate a defendant's base offense level if the defendant does not intend to produce the negotiated amount and is not reasonably capable of producing it. U.S.S.G. § 2D1.4, comment. (n.1). United States v. Brooks, 957 F.2d 1138, 1151 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S. 1992). Although Diaz was unsuccessful before his arrest in finding a source willing to front him a large amount of cocaine, he definitely intended to produce the amounts he negotiated. When he did not succeed on his own in obtaining cocaine on credit, he again teamed up with his co-conspirators, who sold Rowley nearly a kilogram of cocaine. Because Diaz did not show by a preponderance of the evidence that he did not intend to produce and was incapable of producing the four kilograms he negotiated, his sentence was correctly computed using both the amount of cocaine bought from co-conspirators and the four kilograms negotiated by Diaz.
 
 
 9
 The judgment of the district court is accordingly affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Luis Acosta, Roberto Rodriguez, Yovanne Abreu, and Jose Quesada entered guilty pleas to conspiracy to distribute more than five kilograms of cocaine. Anthony Schaefer entered a guilty plea to conspiracy to distribute more than 500 grams of cocaine and testified at Diaz's trial. Edwin Colon was also charged; the outcome of his prosecution does not appear in the materials presented on appeal
 
 
 [2]
 Miranda v. Arizona, 384 U.S. 436 (1966)