**UNITED STATES of America,**

v.

**Bernard KING, Petitioner/Defendant.**

Civil No. 2:98cv792.
[Original Criminal No. 2:94cr163–14.]

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 17, 1999.

Cheryl J. Sturm, Westtown, PA, Counsel for plaintiff.

Thomas Dempsey, Vergara & Associates, Hopewell, VA, Local Counsel for plaintiff.

William P. Robinson, Jr., Robinson & Anderson, Norfolk, VA, Trial Counsel for plaintiff.

Laura Tayman, Assistant U.S. Attorney, Norfolk, Counsel for U.S.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on petitioner Bernard King's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.[1] For the reasons set forth below, defendant's motion is **DENIED**.

### I. Factual and Procedural History

On December 2, 1994, a federal grand jury indicted defendant Bernard King and twenty other defendants, charging them with conspiracy to distribute and possess crack cocaine and cocaine. Defendant's trial commenced on July 6, 1995, and on July 13, 1995, the jury found defendant guilty of conspiracy to distribute and possess with intent to distribute in excess of five (5) kilograms or more of cocaine and fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. On October 13, 1995, the court sentenced defendant to life imprisonment. Defendant appealed, and on July 22, 1997, the Court of Appeals for the Fourth Circuit affirmed defendant's conviction and sentence. *United States v. King*, No. 95–5917, 1997 WL 407803 (4th Cir. July 22, 1997) (per curiam).

On July 10, 1998, defendant, through counsel, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On September 9, 1998, the government moved for an extension of time to file its response, which the court granted. The government timely filed its response on November 9, 1998. As defendant did not file a reply, his § 2255 motion is now ripe for determination.

### II. Analysis of Defendant's § 2255 Claims

Defendant raises two sets of claims in his § 2255 motion: (1) a violation of his Sixth Amendment right to counsel because defendant received ineffective assistance of counsel prior to trial, at trial, and at his sentencing; and (2) a violation of his Fifth Amendment right to Due Process.

■ Section 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).

In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The court has thoroughly reviewed the motions, files, and records in this case. Accordingly, based on the circumstances of this case, the court finds no hearing necessary to address defendant's § 2255 motion.

---

1. King is represented by counsel in this collateral attack on his sentence.

## A. Ineffective Assistance of Counsel

Defendant alleges that he received ineffective assistance of counsel prior to trial, at his trial, and at sentencing. The standard of review for an ineffective assistance of counsel claim in a § 2255 motion is different than the standard for other constitutional claims. The *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), "cause and actual prejudice" test does not apply because, as numerous courts have noted, ineffective assistance of counsel is an issue which "is more properly raised in a § 2255 habeas motion for collateral relief," and thus should not be raised on direct appeal. *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir.1991); *see United States v. Lurz*, 666 F.2d 69, 78 (4th Cir.1981); *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir.1973). One who raises an ineffective assistance claim for the first time in a § 2255 motion does not have to pass muster under *Frady*, but need only satisfy the less stringent two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, defendant must show that counsel did not provide "reasonably effective assistance." *Id.* at 687, 104 S.Ct. 2052. In other words, to show deficient performance, the defendant must prove that counsel's advice was not " 'within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Second, "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. To demonstrate prejudice, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Failure to meet either prong defeats a defendant's ineffective assistance of counsel claim. *Id.* at 700, 104 S.Ct. 2052. The court need not address both components of the test if the defendant makes an insufficient showing on one part of the test. *Id.* at 697, 104 S.Ct. 2052.

King claims that his counsel was ineffective in three ways. First, before the trial, King claims his counsel failed to accurately advise him on whether or not to accept an offered plea bargain. Second, King asserts that his counsel was ineffective for using his peremptory strikes in a racially discriminatory manner. King's final claim is that his counsel was ineffective at sentencing for not requiring the sentencing judge to find beyond a reasonable doubt that the controlled substance that was the object of the conspiracy was crack cocaine. For the reasons discussed below, the court finds that all of defendant's ineffective assistance of counsel claims are completely without merit.

### 1. King's Counsel Was Not Ineffective Before Trial

King claims that his counsel was ineffective prior to his trial for failing to advise him that the evidence against him was overwhelming and that King should accept a plea bargain. As part of this claim, King asserts that his counsel did not provide an accurate comparison between the guideline range that would apply after a conviction at trial and the range that would apply after a plea bargain.

The failure to communicate the offer of a plea bargain to a defendant deprives a defendant of the constitutional right to effective assistance of counsel. *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir.1994). However, a defense counsel does not violate professional standards by failing to recommend or attempt to persuade a defendant to accept a plea bargain. *Jones v. Murray*, 947 F.2d 1106, 1110 (4th Cir.1991). The decision of whether or not to accept a plea bargain is the sole province of the accused in a criminal case, *id.* at 1111, and counsel is under an "affirmative duty" to avoid placing undue influence on that decision. *Id.* Instead, standards of professional conduct only require that the defense counsel should "advise the client of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision." III American Bar Association Standards for Criminal Justice, Standard 14–3.2 (2d ed. 1986 Supp.) (quoted in *Jones*, 947 F.2d at 1110).

In this case, the unrefuted affidavit of King's defense counsel, William P. Robinson, indicates that although King was advised by Robinson of the difficulty of establishing the defense of duress, King still wished to present the defense at trial. Robinson Decl. at ¶ 2. The duress question was also addressed before opening statements were made in the case. In open court, with the defendant present, there was a full and complete discussion of the duress defense. Trial Tr. at 38–50 (July 6, 1995). At that time, King's counsel stated to the court that all of the duress issues were previously discussed with the defendant and that "it was [King's] insistence that we proceed as we are with respect to a trial and in this fashion." *Id.* at 49. Furthermore, the court then told the defendant in no uncertain terms that the duress defense was "very tenuous." *Id.* at 50. In light of all of this evidence, King cannot now claim that he was unaware of the weakness of his defense and that there was a very strong case against him.

Robinson also states that he and King discussed the government's offer of a guilty plea, but that King never entertained " in the slightest, the possibility of entering a guilty plea." Robinson Decl. at ¶ 3. It is also apparent from Robinson's affidavit that, although Robinson evaluated the probability of success of the duress defense as low, his evaluation was hampered by King's withholding of information. Although representing to Robinson that he never returned to New York because he was afraid of retribution from other members of the drug conspiracy, in fact, the evidence at trial demonstrated that King had actually returned to New York at least twice. *Id.* at ¶ 4.

In support of its brief in opposition to King's motion, the government presented a letter from the assistant United States Attorney in King's case to King's attorney. Not only does the letter fully discuss the duress defense and its unsuccessful use by one of King's co-defendant's in an earlier trial, the letter also details the government's plea offer to King. King does not dispute the contents of this letter or claim that Robinson never discussed the government's offer with him. King's brief implicitly acknowledges that he did, in fact, discuss the possibility of entering a plea agreement with Mr. Robinson. Instead, King now complains to the court that his counsel did not vigorously push him to accept the government's offer. But, given King's stated insistence on presenting his duress defense, Robinson cannot be faulted for failing to argue a position that would only have fallen on deaf ears. *Jones,* 947 F.2d at 1111 (holding that it was not "outside the wide range of professionally competent assistance," for a defense counsel to refrain from "a vigorous attempt to change his client's mind").

Although the court finds that King's counsel was effective during the plea negotiations, defendant's claim also fails because he cannot demonstrate that he was prejudiced in any way by the failure to enter a guilty plea. King received a life sentence based on the fact that his final, adjusted offense level was 45 and his criminal history category was IV. Even if King had pled guilty and received all three acceptance of responsibility points, a life sentence still would have been within the adjusted guideline range.[2] Given King's leading role in this wide-ranging drug conspiracy and the quantity of drugs sold, it is highly improbable that the court would have sentenced King to less than a life sentence.

The court finds that there is no merit to the assertion that King's defense counsel was ineffective during the pre-trial stage of the proceedings. The court also finds that defendant suffered no prejudice because the sentence King received was still within the guideline range that King would have faced had his offense level been reduced by three points for acceptance of responsibility.

### 2. Use of Peremptories

King next claims that he is entitled to succeed on his § 2255 motion because his counsel used his peremptory strikes in a discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33

2. With the acceptance of responsibility points, King's guideline range would have been 360 months to life, based on his criminal history category of IV and a reduced offense level of 42.

(1992). As a result of this discriminatory use of peremptories, King argues that his counsel was ineffective. Even assuming that defendant has standing to raise this particular type of claim in his § 2255 motion,[3] the court finds that defendant's claim does not satisfy *Strickland* because the evidence against King was so overwhelming that any reasonable jury would have convicted him. Therefore, defendant cannot demonstrate any prejudice as a result of his attorney's conduct.

■ Initially, the court notes that *Batson* errors are not presumptively prejudicial when raised in an ineffective assistance of counsel claim. *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir.1998); *Davidson v. Gengler*, 852 F.Supp. 782, 787 (W.D.Wis.1994); *see Strickland*, 466 U.S. at 692, 104 S.Ct. 2052 (stating that certain Sixth Amendment errors are presumptively prejudicial: "actual or constructive denial of the assistance of counsel altogether"; "state interference with counsel's assistance"; and "an actual conflict of interest"). In *Strickland*, the Supreme Court stated that, apart from conflicts of interest, prejudice is only presumed when the constitutional error is easily identified and when "the prosecution is directly responsible." *Strickland*, 466 U.S. at 692, 104 S.Ct.

2052. In the context of this specific *Batson* challenge, the defendant is not challenging any action by the prosecutor. Rather, he is challenging his own attorney's alleged violation of *Batson.*[4] Moreover, the record is clear that King's attorney raised a *Batson* objection and argued it to the trial court and on appeal.

At King's trial, eight people testified that they supplied King with drugs to sell in Norfolk and Portsmouth. In addition, Paul Ebanks, a leader of the conspiracy, testified that King not only worked off the money that he owed to Gillins, but that King also continued to sell crack cocaine even after the debt was paid, making at least $1,500 a month and sharing the remainder of the profits with Gillins, Ebanks, and the rest of the conspirators. King himself admitted that during his time with the conspiracy, he personally moved eight to ten kilograms of crack cocaine, which, by his own estimate, had a profit potential of between one and two million dollars.[5] By his own admission at trial, King provided crack cocaine to five people for them to distribute on his behalf. *King*, 1997 WL 407803, at *3. King testified that Anthony Moore was his lieutenant and that he and Moore controlled four other distribu-

3. The claim raised by King in his § 2255 motion is an ineffective assistance of counsel claim based on the Sixth Amendment right to counsel. This is a right that is personal to the defendant, and does not support a third-party standing analysis. The Supreme Court has made clear that *Batson* claims are equal protection claims based on the Fourteenth Amendment, and that the rights being protected are not those of the criminal defendant, but the right of the jury members to be free from discrimination. *See Georgia v. McCollum*, 505 U.S. 42, 48–49, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) ("Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination."); Barbara D. Underwood, *Ending Race Discrimination in Jury Selection; Whose Right is it, Anyway?*, Colum. L.Rev. 725, 727 (1992) (cited in *McCollum*, 505 U.S. at 49, 56, 112 S.Ct. 2348) (stating that *Batson* claims are designed to protect the rights of jurors). Furthermore, the Court has refused to find that the discriminatory actions in a *Batson* claim violate the Sixth Amendment right to a jury drawn from a cross-section of the community. *Lockhart v. McCree*, 476 U.S. 162, 173–74, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). To the extent that defendant relies on *United States v. Ovalle*, 136 F.3d

1092 (6th Cir.1998), for his claim of standing, it appears to the court that such a claim is precluded by *Lockhart*. *Ovalle* was a direct appeal of a Sixth Amendment challenge to the jury venire—a cross-section of the community claim—and not, as in this case, a challenge to the petit jury that was selected to hear the case.

4. The prosecutor did object on *Batson* grounds to defendant's use of peremptories in regard to white males. The trial court expressed doubt as to the viability of defendant's race neutral argument, but still overruled the objection. In effect, the court allowed King to have the jury that he desired. That jury still found him guilty.

5. King testified that he had to give Gillins $1,000 for every ounce of crack cocaine that he sold. Even using King's lowest estimate for the amount of crack that he sold, however, there are 281.6 ounces in eight kilograms, which equates to $281,600 that King had to return to Gillins. Again using King's own conservative estimate of $1,000,000 in profit on the amount of cocaine that he sold, this still leaves over $700,000 in profits unaccounted for. This is just one example of the many inconsistencies in King's claims at trial.

tors. King also testified that his main customers, different from his distributors, were also drug dealers. Furthermore, numerous witnesses testified that King had at least six people distributing crack for him. *Id.*

In addition, undercutting King's claim that he only participated in the conspiracy under duress, there was testimony that King was considered "part of the family." *Id.* Furthermore, King willingly participated in the sale of crack cocaine in the Tidewater area for close to a three-year period. The evidence also demonstrated that King was free to come and go as he pleased and that he even traveled back and forth to New York City on a number of occasions, both with and without the knowledge, or "permission" as the defendant claimed, of the leaders of the Gillins organization.

Other than baldly asserting that a *Batson* violation occurred in this case, King has made no attempt to demonstrate that the jurors in his case were not impartial, or that there was any adverse effect on the trial's outcome. *See Young,* 161 F.3d at 1161 (quoting *Wright v. Nix,* 928 F.2d 270, 274 (8th Cir.1991)). Therefore, because it is clear to the court, beyond any doubt, that the outcome of the proceeding would not have been different, King has not made the requisite showing of prejudice and his ineffective assistance of counsel claim fails.

### 3. *Sentencing*

King's last ineffective assistance of counsel claim is that his counsel was deficient for not requiring the sentencing judge to find beyond a reasonable doubt that the controlled substance at issue was crack cocaine. King claims that had his counsel acted effectively on this issue he would have been sentenced for regular cocaine instead of crack cocaine.

First, King argues that the trial court did not properly apply United States Sentencing Guideline § 1B1.2(d). That section states:

A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

U.S.S.G. § 1B1.2(d). Application note 5 for that section goes on to add that when "the verdict or plea does not establish which offense(s) was the object of the conspiracy," subsection (d) should only be applied "if the court, were it sitting as trier of fact, would convict the defendant of conspiring to commit that object offense." U.S.S.G. § 1B1.2, Application Note 5. As a result, because the court must make this determination as if it were the trier of fact, defendant concludes that the standard for this finding is beyond a reasonable doubt, compared with the ordinary preponderance of the evidence standard used at sentencing.

■ Although defendant's interpretation of the sentencing guidelines is correct insofar as it relates to a conspiracy count containing two separate, substantive offenses, *see United States v. Manges,* 110 F.3d 1162, 1168, 1178–79 (5th Cir.1997) (applying § 1B1.2(d) to single conspiracy count that charged defendants with conspiracy to commit mail fraud and conspiracy to commit bribery), that section of the Guidelines simply does not apply to a conspiracy count that charges only *one* substantive offense. In this case, King was charged with a conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). The fact that a penalty code section was also included in the count is not sufficient to make King's conspiracy count a multiple offense conspiracy count to which § 1B1.2(d) would apply. King was convicted by the jury of a conspiracy count containing only one substantive offense. As a result, there is no basis for King's argument that the court had to use the higher, beyond reasonable doubt standard at King's sentencing.[6]

In fact, King is really arguing that he should have been sentenced as if the conspiracy distributed only powder cocaine, and not crack cocaine, because the jury returned a general verdict to a conspiracy involving mul-

---

6. In any event, the evidence was beyond a reasonable doubt on this point. *See supra* § II.A.2 at 10–12.

tiple drugs. In a unanimous decision, this very argument was recently rejected by the Supreme Court. *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 1477, 140 L.Ed.2d 703 (1998).

■ Moreover, King's assertion that he was not involved with crack cocaine is simply not true. Not only did numerous witnesses testify at trial that King had six people selling crack cocaine for him, but "King himself said that he provided crack to five others for their distribution." *King,* 1997 WL 407803, at *3.[7] In addition, the Fourth Circuit specifically found on appeal that the district court did not err in sentencing King for crack cocaine, because defendant entered into a stipulation "to the accuracy of lab reports which revealed that the substance seized from King and his co-conspirators was crack cocaine." *Id.*

Accordingly, the court finds that King's counsel was effective at sentencing by not raising a meritless argument. In addition, the court finds that defendant suffered no prejudice because the evidence of King's involvement with crack cocaine was so overwhelming that it not only met the required preponderance of the evidence standard, but also demonstrated beyond a reasonable doubt that King supervised at least five others in the distribution of crack cocaine.[8]

### B. Due Process Claims

The usual and customary method of correcting trial errors is by appeal. *Sunal v. Large,* 332 U.S. 174, 177, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). Where a constitutional error asserted by a defendant in a § 2255 motion was not raised at trial, sentencing, or on direct appeal, the defendant may have his claim reviewed under limited circumstances. He must, however, meet a two-part "cause and actual prejudice" test to obtain collateral relief. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Maybeck,* 23 F.3d 888, 890 n. 1 (4th Cir.1994). Under that test, "to obtain collateral relief based on trial errors to which no contemporaneous objection

was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584. This standard presents "a significantly higher hurdle than would exist on direct appeal." *Id.* at 166, 102 S.Ct. 1584.

Should a movant fail to demonstrate cause and prejudice, Supreme Court precedent nevertheless authorizes collateral review in a narrow class of cases, where the error involves a " 'fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). However, this rule applies only in "a very narrow realm of cases where a constitutional violation may have resulted in the conviction of an innocent person." *Noble v. Barnett,* 24 F.3d 582, 586 n. 5 (4th Cir.1994).

■ Defendant realleges all of his ineffective assistance of counsel claims as violations of his due process rights under the Fifth Amendment. However, defendant did not raise these issues at trial or on direct appeal. Therefore, King can only obtain collateral relief after demonstrating cause and actual prejudice. King has not sufficiently alleged, much less demonstrated, either prong of the *Frady* analysis. To the extent that defendant is arguing that the cause for failing to raise these issues earlier was his counsel's ineffectiveness, this argument fails for the reasons stated above.

With respect to his sentencing claim, King claims that this claim is not procedurally barred because of his due process right to receive a sentence that is not based on a materially false assumption. King also claims that he is entitled to relief on this issue because basing the sentence on a false assumption resulted in a fundamental miscarriage of justice. As discussed in substantial detail above, the only material falsity presented to the court was made by King. Furthermore, the only false assumption brought to this court's attention was defendant's ef-

7. *See supra* § II.A.2 at 10–12 for a detailed discussion of King's involvement in the conspiracy to distribute crack cocaine.

8. *See supra* note 6.

fort to persuade the court that the conspiracy count charged multiple offenses when, in fact, there was only a single substantive offense charged in the conspiracy count.

Accordingly, none of these claims satisfies the *Frady* "cause and actual prejudice" test. Moreover, because King's claims are completely meritless, they clearly do not constitute fundamental defects that inherently result in a complete miscarriage of justice.

### III. Conclusion

For the reasons stated above, the court **DENIES** King's motion under § 2255 to vacate, set aside, or correct his sentence.

King is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within sixty (60) days from the date of this Opinion and Final Order. For the reasons above stated, the court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of appealability.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to King and his current counsel, his trial counsel, and the United States Attorney.

It is so **ORDERED.**