**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Lidge BOLTS and Joe Dee Hicks, Defendants-Appellants.**

No. 76–4253.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1977.

John A. Brady (Court-appointed), Fort Worth, Tex., for Charles Lidge Bolts.

Joe Dee Hicks, pro se.

David K. Meyercord (Court-appointed), Dallas, Tex., for Joe Dee Hicks.

Michael P. Carnes, U. S. Atty., Judith A. Shepherd, H. Jay Ethington, Asst. U. S. Attys., Dallas, Tex., John W. Sweeney, Jr., Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This criminal case involves a conspiracy, of which appellant Joe Dee Hicks was the alleged mastermind, to smuggle thousands of dollars worth of heroin and cocaine into the United States from Southeast Asia and from Colombia, South America. Appellants were convicted pursuant to an eleven-count indictment against fifteen persons. Hicks and the other appellant, Charles Lidge Bolts, were tried together before a jury

with Hicks' wife, Janet, whose case was severed after the Government had rested. The other persons named in the indictment, with the exception of those not yet apprehended, entered guilty pleas.

Specifically, Hicks was found guilty of conspiring to commit violations of 21 U.S.C. §§ 841(a)(1), 843(b), 952 and 960 (Count I); engaging in a continuing criminal enterprise, in contravention of 21 U.S.C. § 848 (Count II); and causing the importation of heroin and cocaine, in violation of 21 U.S.C. §§ 952(a), 960, and 18 U.S.C. § 2 (Counts III and IV). He received consecutive sentences of fifteen years' imprisonment plus special parole terms of three years for each of Counts I, III and IV, and a concurrent sentence of life imprisonment for Count II. Bolts was convicted of conspiracy (Count I), and received a sentence of fifteen years' imprisonment plus a special parole term of five years.

Both appellants challenge their convictions on a number of separate grounds. Hicks raises the following issues: (1) that his passport was unreasonably seized in violation of the fourth amendment, and thus was improperly admitted into evidence; (2) that the evidence was insufficient to support the conviction on Count II, because all of the elements of a continuing criminal enterprise under 21 U.S.C. § 848 were not proven; (3) that prosecutorial questioning, comments by the trial judge and the admission of certain evidence individually or cumulatively constituted prejudicial error in connection with the jury's consideration of Count II; and (4) that the consecutive sentencing was improper. Bolts contends on his appeal: (1) that the court erred in trying him jointly with Hicks; (2) that the court erred in refusing to issue the particular jury charge proposed by Bolts on accomplice testimony; (3) that the general guilty verdict returned against him was impermissibly vague and indefinite; (4) that the evidence was insufficient to support his conviction; and (5) that he was improperly and prejudicially denied the right to question co-defendant Janet Hicks at trial. We have considered each of these contentions and, for the reasons stated below, we affirm the convictions.

The evidence adduced at trial described a courier system, worldwide in operation, for narcotics trafficking into the United States. Most of the evidence consisted of the testimony of appellants' coconspirators. Witnesses testified that Hicks induced them to become his couriers, that in some instances he went to Southeast Asia or South America with a courier at the outset, paid the latter's travel expenses, provided the drugs to be smuggled into the United States or arranged contacts for the procurement of the narcotics and financed the purchases, arranged for the illegal importation of the heroin and cocaine and, once the narcotics had been smuggled into the country, received either the narcotics or the proceeds therefrom. There was also testimony by couriers as to meetings with Bolts within the United States for the purpose of either delivering narcotics to him or receiving money from him. Sometimes Janet Hicks was the actual source of expense money or a transportation ticket, according to the testimony. While there was also testimony that some of the couriers were hired by another coconspirator, Bandy, rather than by Hicks, there was also evidence that Hicks financed those persons' expenses. In sum, there was ample evidence describing Hicks as the kingpin of the trafficking system. Although Bolts' role was not as exhaustively described at trial, he was also directly implicated by the testimony.

I.

*Hicks' Appeal*

The first issue raised by Hicks involves the seizure of his passport, which was admitted into evidence at trial, over Hicks' motion to suppress. Hicks maintains that the seizure violated the requirement of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), that a "plain view" discovery be inadvertent. His argument is that the federal Drug Enforcement Administration agents who arrested him had been aware for several months

that Hicks had a passport and that it would constitute evidence of a conspiracy. Hicks contends that the agents "anticipate[d] the discovery of the passport and intend[ed] to seize it." Brief for Appellant Hicks at 10.

Hicks was arrested along with his wife in the bedroom of their home, pursuant to a warrant. At the time, Janet Hicks was permitted to call her parents to have them pick up her daughter. After the Hickses had dressed, they were taken into the den to await the arrival of Janet Hicks' parents. While one of the agents was leaning against a bookcase, he saw the passport close by in plain view on an open shelf at approximately his shoulder height. No search was made of the room in order to observe the passport. Immediately grasping the passport's significance, the agent seized it without a warrant for the seizure.

■ This case does not present a situation where an agent maneuvered himself into a position in order to discover evidence he was seeking. The discovery of the passport, although a foreseeable possibility, was unplanned and inadvertent. What *Coolidge* proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it. *Id.*, 403 U.S. at 470, 91 S.Ct. at 2040. Here the agent had a legitimate reason for being in the room, he came upon the passport inadvertently and it was immediately apparent to him that the passport constituted evidence of the conspiracy. Even if the DEA agents had expected to find the passport—and the evidence does not suggest they did—that would not have destroyed the necessary inadvertence to satisfy *Coolidge*. *United States v. Worthington*, 5 Cir., 1977, 544 F.2d 1275, 1280 n.4 [*cert. denied* —— U.S. ——, 98 S.Ct. 55, —— L.Ed.3d ——]; see *United States v. Cushnie*, 5 Cir., 1973, 488 F.2d 81, *cert. denied*, 419 U.S. 968, 95 S.Ct. 233, 42 L.Ed.2d 184 (1974).

Hicks' second argument on appeal is that there was insufficient evidence to support a conviction for engaging in a continuing criminal enterprise. A person engages in a continuing criminal enterprise, as defined in 21 U.S.C. § 848(b)(2), if he violates the Drug Act in a continuing series of such violations

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

Hicks maintains that the requisite elements of the crime were not present. He asserts that there were not five persons in positions under his supervision, and that he did not obtain substantial income from the narcotics transactions.

■ We consider first the issue of the number of persons in the enterprise. There was evidence indicating that there were six couriers: Coleman Ray Bandy, Dale Norris, Jerry Lynn Coffman, Mary Norris, Lloyd Pitchford and Jackie Kennedy. Hicks maintains, however that Pitchford and Kennedy worked for Bandy, and that Bandy was not a subordinate of Hicks but was perhaps some sort of business equal. Hicks asserts that there were inconsistencies in the testimony as to whether Bandy was working under him. Our examination of the record leads us to reject appellant's argument. The testimony clearly shows that Hicks was calling the shots with respect to the narcotics smuggling of the couriers. Whether he had personal contact with two of them is immaterial; he was the kingpin of the trafficking activities, and thus occupied an organizational, supervisory or management status with respect to the other persons involved therein. We note, too, although it is unnecessary to our decision, that Janet Hicks also played a role in the courier system, thus bringing the number of persons subordinate to Hicks in the continuing criminal enterprise to at least seven.

■ Appellant Hicks contends in addition that, for a section 848 violation, the requisite five subordinates must act in concert at

the same time. However, the statute contains no such requirement, and we decline to impose it here. *United States v. Sperling*, 2 Cir., 1974, 506 F.2d 1323, *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975).

■ We now consider the other element disputed herein of a section 848 violation: "obtain[ing] substantial income or resources." Hicks asserts that the statute requires the accused to obtain substantial *income* from the violations. He concedes, however, that the testimony showed substantial amounts of money passing through the hands of the parties to the transactions. Indeed, there was ample evidence that large quantities of heroin and cocaine passed through the trafficking operations and that many thousands of dollars changed hands, some of which was received directly by Hicks. This satisfied the statutory requirement. *See United States v. Jeffers*, 7 Cir., 1976, 532 F.2d 1101; *United States v. Sisca*, 2 Cir., 1974, 503 F.2d 1337, *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283.

In a related argument, Hicks asserts that there were a prejudicial remark by the trial court, an improper suggestion by the prosecutor, and the improper admission of opinion evidence which, individually or cumulatively, prejudiced appellant's cause on the issue whether he obtained substantial income from the narcotics offenses. Since we have already held in essence that it was unnecessary for the Government to show proof of net income, appellant's contention loses much of its significance. Furthermore, consideration of each alleged impropriety reveals no prejudice to Hicks.

■ Hicks complains of a comment by the court which questioned the relevancy of certain testimony as to his personal financial condition. Specifically, the testimony was designed to show that Mrs. Hicks had financed the purchase of a vacuum cleaner, rather than paying cash for it. We entertain strong doubts ourselves as to the relevancy of the testimony, which was accompanied by a great number of other exhibits—admitted into evidence—showing, for example, that Hicks was unable to meet his personal financial obligations. That he could not pay his bills and was unable to manage properly his finances is not necessarily relevant to the question whether he obtained substantial income or resources from the criminal enterprise. Furthermore, even assuming that the evidence was relevant, the judge admitted it, and gave the jury an adequate cautionary instruction, explaining that all evidence which was admitted was relevant in the court's view and should be given such consideration as the members of the jury felt it deserved, and that the jury should disregard the judge's remarks on any jury question. The challenged comment did not amount to reversible error. *United States v. Onori*, 5 Cir., 1976, 535 F.2d 938, 943–44.

■ Appellant Hicks also complains of the following question asked him during cross-examination by the prosecutor: "Do you want to tell the jury what the number is of your Swiss bank account?" Hicks' response was, "I wish I had a Swiss bank account." Hicks contends that the question was prejudicial and was based upon a fact which was not in the record and which the prosecutor was not prepared to prove. In denying a motion for a mistrial, the court instructed the attorneys in the presence of the jury that no questions should be asked without good faith and a basis of belief. Later, the court held an in camera hearing into the Government's good faith in asking the question. The court determined that there was no tangible evidence of a Swiss bank account, but that, based upon the in camera hearing and the evidence in the record, there was a basis for the question and it had thus been asked in good faith. We accept this finding. In light of the other evidence on the amount of money which changed hands, the question was not highly prejudicial anyway. Furthermore, the court instructed the jury to disregard the question and the answer. Even assum-

ing that the question was improper, the error was cured by the court's instruction to disregard. *United States v. Harrington*, 5 Cir., 1976, 543 F.2d 1151; *cf. United States v. Smith*, 5 Cir., 1975, 517 F.2d 710; *United States v. Pritchard*, 5 Cir., 1969, 417 F.2d 327.

■■■ Hicks' last contention on the issue of prejudice at trial involves the admission of testimony of a DEA agent on the value of the narcotics. Appellant mounts several attacks on the admission of the evidence, his primary complaint apparently being that the testimony included evidence on street value which was irrelevant and highly prejudicial, insofar as the large amounts of money discussed in such testimony went to a closely contested issue in the case. It is well settled that the admissibility of expert testimony is a matter within the broad discretion of the trial judge and his decision is not to be disturbed unless it is manifestly erroneous. *United States v. Lopez*, 5 Cir., 1976, 543 F.2d 1156. Having examined the challenged testimony and considered the assertions of appellant on this point, we find nothing manifestly erroneous about the reception into evidence of the agent's opinion testimony. Even assuming a question of relevancy existed with regard to the evidence of street value, in particular, we disagree that that evidence went to a closely contested issue. The evidence that Hicks obtained substantial income or resources was overwhelming. Therefore, there was no prejudice in the admission of this testimony.

■■ Hicks' final contention is that the consecutive sentences under Counts I, III and IV were imposed improperly because the conspiracy count charged the same acts for which he was charged with being an accessory in the substantive counts. This argument is without merit. *Curtis v. United States*, 5 Cir., 1977, 546 F.2d 1188; *see*

*United States v. Peterson*, 4 Cir., 1975, 524 F.2d 167, *cert. denied*, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976), 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Towns*, 6 Cir., 1975, 512 F.2d 1057, *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1976); *United States v. Tierney*, 9 Cir., 1970, 424 F.2d 643, *cert. denied*, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87.

## II.

### *Bolts' Appeal*

Bolts' first contention is that the trial court erred in denying his motions for severance. He contends that being tried jointly with Hicks was prejudicial to his (Bolts') cause under Fed.R.Crim.P. 14,[1] because of the mass of evidence against Hicks, whereas Bolts was charged only in the conspiracy count, under which only two of the overt acts alleged in the indictment referred to him. In this regard, he complains that the testimony of the coconspirators Bandy and Norris also prejudiced him. Appellant's argument on prejudicial joinder is without merit.

■■■ The grant or denial of a motion for severance rests in the sound discretion of the trial judge, and his ruling will not be disturbed on appeal, absent an abuse of discretion. *E.g., United States v. Smith*, 5 Cir., 1977, 550 F.2d 277, 283; *United States v. Morrow*, 5 Cir., 1976, 537 F.2d 120, 134. In considering a claim like this, we start with the general rule that persons jointly indicted should be tried together. *Morrow, supra*, 537 F.2d at 136. In *Morrow* we resolved essentially the same issue against the position here urged by appellant. A claim of disparity of evidence—*i.e.*, the assertion that the quantity of evidence against one defendant was *de minimis* in relation to the evidence introduced against one or more codefendants and that the dis-

---

1. Fed.R.Crim.P. 14 provides in pertinent part:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial to-

gether, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

parity resulted in prejudice—justifies severance only in the most extreme cases, and only where the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction. *Id.* at 136–37. Here an adequate cautionary instruction was given, and we perceive no prejudice so extreme as to have denied Bolts a fair trial. *See id.* at 137. Accordingly, we find no error in the judge's refusal to sever Bolts' trial.

◼ Bolts' second contention is that the district court erred in refusing to give the jury an accomplice instruction proposed by Bolts. The proposed instruction[2] would have charged, *inter alia,* that Bolts' position was that the Government witnesses Bandy and Norris testified against him for reasons of self-interest. That instruction would have also reminded the jury at that point in the total charge that Bolts asserted his innocence and that, if the jury believed the two witnesses were untruthful, the jury could disregard their testimony and could acquit Bolts if there was no remaining testimony against him. The charge proposed by Bolts was not a neutral statement of the law, but was argumentative. The court instructed the jury on considering, in the weighing of the testimony, the interest of witnesses, in general, and their relationship to the parties. Furthermore, the court gave a specific instruction on accomplice testimony[3] which correctly stated the law and was sufficient. *United States v. Muncy,* 5 Cir., 1976, 526 F.2d 1261; *see United States v. Johnson,* 5 Cir., 1977, 553 F.2d 901.

Appellant Bolts also argues that the court erred in refusing to permit him to elicit testimony from Janet Hicks. Bolts sought to call her as a witness after her case had been severed from the case at bar. Bolts' counsel had previously been advised outside the jury's presence that Janet Hicks would assert both the fifth amendment privilege and the spousal privilege if she was called as a witness by Bolts. Accordingly, the court granted the motions of appellant Joe Dee Hicks and of Janet Hicks that the latter not be put on the stand. When

---

2. The charge proposed by Bolts provided:
 You are instructed that it is the position of the Defendant Charles Lidge Bolts that he was not involved in the narcotics conspiracy alleged in the Indictment. It is his further position that the Government witnesses Coleman Ray Bandy and Dale Everett Norris have testified falsely against him for reasons of self-interest, such as to escape further prosecution or receive lesser punishment or both such reasons. You are further instructed that if you believe from the testimony that either the Government witness Coleman Ray Bandy or the Government Witness Dale Everett Norris, or both such witnesses were untruthful, with regard to any testimony from either or both that may have implicated Mr. Bolts in the offense charged against him in the Indictment, or you have a reasonable doubt with regard to the truthfulness of such testimony then and in such event, you will disregard such testimony of such witness or witnesses, as such testimony applies to the Defendant Charles Lidge Bolts and weigh the guilt or innocence of Defendant Charles Lidge Bolts with respect to any remaining evidence against Defendant Charles Lidge Bolts, if there be any such remaining evidence, and if you find no such evidence remaining you shall acquit the Defendant Charles Lidge Bolts and say in your verdict Not Guilty.
 Record at 244–45. On appeal, Bolts also argues that the charge which was given by the court should have instructed on the desirability of corroboration for the two witnesses' testimony.

3. The court's instruction stated in pertinent part:
 An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.
 You should never convict a defendant upon the unsupported testimony of an accomplice, unless you believe the unsupported testimony beyond a reasonable doubt.
 Record at 283.

thereafter Bolts called Janet Hicks as a defense witness, the court advised the jury that she would not appear because of "procedural reasons."

 Appellant Bolts here contends that he was thus denied the right to compulsory process for obtaining witnesses and the right to effective assistance of counsel. He makes three arguments in this regard. First, he asserts that he was prejudiced by being permitted to call Mrs. Hicks as a witness and then not being permitted to question her, without a sufficient explanation being issued to the jury. However, appellant called Mrs. Hicks with full awareness that she would assert the fifth amendment and spousal privileges. He cannot now complain of prejudice from a situation of his own making. His second argument is that he was prejudiced insofar as he was denied testimony which he anticipated would have been helpful to his cause. This contention is also without merit. Bolts has no constitutional right to compel Mrs. Hicks to take the stand and testify when it was known in advance that she intended to assert the fifth amendment privilege. *United States v. Lacouture,* 5 Cir., 1974, 495 F.2d 1237, *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648; *see United States v. Gloria,* 5 Cir., 1974, 494 F.2d 477, *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267. Our conclusion is supported, moreover, by Mrs. Hicks' intended assertion of the spousal privilege. *Cf. San Fratello v. United States,* 5 Cir., 1965, 340 F.2d 560. Bolts' third argument on this issue is that he should have been able to elicit from Mrs. Hicks on the stand and in the jury's presence her exercise of privilege, if she had declined to testify. This contention is without merit. *See United States v. Tuley,* 5 Cir., 1977, 546 F.2d 1264; *Lacouture, supra.* The court acted not only properly but wisely.

 Next, we consider Bolts' contention of insufficiency of evidence. It is well settled that on appellate review of a conspiracy case, only slight evidence is necessary to connect a particular defendant with the conspiracy, once the existence of the conspiracy is established by independent evidence. *United States v. Alvarez,* 5 Cir., 1977, 548 F.2d 542; *United States v. De La Fuente,* 5 Cir., 1977, 548 F.2d 528; *United States v. Binetti,* 5 Cir., 1977, 547 F.2d 265; *Morrow, supra.* The thrust of appellant's argument on this issue appears to go to the proof that he knowingly or intentionally became a member of the conspiracy alleged in Count I of the indictment. We thus need not belabor the existence of the conspiracy, which was amply proven, in any event, by the other independent evidence about the couriers' narcotics trafficking activities under the leadership of appellant Hicks. We therefore turn to the evidence in the record implicating Bolts.

Coconspirator Bandy testified that he had gone to Bolts' house several times with appellant Hicks, and that their purpose was either to deliver heroin or cocaine or to pick up money for narcotics that they had already delivered there. Bandy testified at one point that he did not personally make deliveries to Bolts, but that he and Hicks would take the narcotics with them in the car, with Hicks bringing the drugs into the house and Bandy waiting outside in the car. Sometimes, according to other testimony by Bandy, they both went in the house and saw Bolts.

 The testimony of coconspirator Norris was more extensive in detailing visits to Bolts' house. One such visit occurred following Norris' return to Dallas from Bogota with a kilo of cocaine in January 1974. Norris said that he and Hicks went to Bolts' house to deliver part of that shipment, and that he had previously been there several times with heroin. On another occasion, Norris went by himself to Bolts' house to pick up, rather than to deliver, a small quantity of heroin. Usually when the two men went to Bolts' house, Norris testified, he would wait in the car while Hicks went inside. Norris testified that he did accompany Hicks inside the house with narcotics on two occasions, however, and that he saw Bolts weigh the narcotics (heroin brought back by Norris from Thailand), on what

looked to Norris like postal scales. Norris also said that he saw Bolts give Hicks money both at the house and at a restaurant, although he did not know how much was involved.

We said in *Alvarez:*

[T]he "slight evidence" rule finds its proper application where persons are clearly connected to the conspiring group or are found acting in such a manner as unmistakably to forward its purposes. In such instances, given the clandestine character of such projects, slight additional evidence suffices to base an inference that one who has been shown beyond reasonable doubt to be a participant was as well a *knowing* participant. . . .

*Id.,* 548 F.2d at 544. Here Bolts was found not only to be clearly connected to at least three of the coconspirators, but was shown by the testimony to have engaged in acts which forwarded the purposes of the narcotics trafficking operation. The evidence was more than sufficient to support Bolts' conviction.

We turn finally to Bolts' last contention that the general verdict of guilty returned against him was impermissibly vague and indefinite in that it did not specify the particular substantive crime he was found guilty of conspiring to commit. He asserts a due process right under the fourteenth amendment to be advised of the particular substantive offense set forth in Count I with respect to which he is being sentenced. The contention is novel, but due consideration reveals its lack of merit.

Bolts was found guilty as charged with conspiracy to commit violations of several statutory provisions, to wit, 21 U.S.C. §§ 841(a)(1), 843(b), 952, and 960. The significance of his argument is that, if he was found guilty of conspiring to violate 21 U.S.C. § 843(b) (use of a communications facility in furthering a felony in contravention of the Drug Act), the maximum applicable sentence would be four years' imprisonment, whereas if found guilty of conspiring to violate 21 U.S.C. § 841(a)(1) (manufacturing, distributing or dispensing, or possessing with intent to manufacture, distribute or dispense, a controlled substance), the maximum applicable sentence would be fifteen years' imprisonment. He argues that in light of the entire charge on conspiracy, the jury might have predicated his guilt on the act or conduct of one or more of the coconspirators in using the telephone in furtherance of the conspiracy. If so, the argument goes, he could only be sentenced to a maximum of four years' imprisonment.

The trial judge, in denying Bolts' motion for a new trial which was based on this contention, among others, found no lack of clarity in the jury's verdict. The court pointed out that all the evidence presented at trial with respect to Bolts went to conspiracy to possess with intent to distribute, and that there was no evidence as to Bolts' use of the telephone nor evidence linking him to others' use of communication facilities. Appellant Bolts argues here that the trial court's solution to this issue invades the province of the jury in derogation of appellant's due process rights.

From an examination of the nature of the crime of conspiracy itself, it is noted that a conspiracy can have more than one objective. *United States v. Beasley,* 5 Cir., 1977, 550 F.2d 261. Moreover, a conspirator need not know each of the other conspirators or each part of the unlawful scheme. *United States v. Netterville,* 5 Cir., 1977, 553 F.2d 903; *United States v. Avalos,* 5 Cir., 1976, 541 F.2d 1100. Determining whether he agreed to a particular objective is thus unnecessary in a case involving a conspiracy with multiple and related criminal objectives. The basic theory of conspiracy is vicarious liability, *United States v. Decker,* 5 Cir., 1976, 543 F.2d 1102, and once a defendant becomes associated with a conspiracy, he is responsible for all acts of it. *Netterville, supra.* Therefore, where the indictment charged a conspiracy to commit violations of several related statutory provisions in what was essentially one narcotics trafficking enterprise, it was unnecessary that the verdict specify the par-

ticular statutory provision which an individual defendant conspired to violate. It was enough that the jury found that he knowingly and intentionally was a member of the conspiracy. The theory of vicarious liability thus exposed him to the maximum sentence for which any of the conspirators could be charged under the conspiracy count. The general verdict and resultant

sentencing herein were therefore not improper as to either Bolts or appellant Hicks, who has adopted this issue on appeal.[4]

AFFIRMED.

**4.** Since oral argument, the Government in admirable candor has called our attention to the holding in *United States v. Gipson,* 5 Cir., 1977, 553 F.2d 453, for our determination as to whether it is detrimental to the Government's position. *Gipson,* however, does not affect our reasoning herein. We held, in *Gipson,* that where a jury was permitted, pursuant to an instruction of the trial court, to convict a defendant even though there may have been significant disagreement among the jurors as to what particular acts he had committed, his right to a unanimous jury verdict had been violated. Appellant does not raise the issue of unanimity in so many words, but we consider and dispose of it today because it is related to the contention expressly stated. *Gipson* involved a situation where the court expressly sanctioned a non-unanimous verdict: the jurors were told that they could disagree as to what particular prohibited acts were committed, as long as each juror found that one of the acts had been done. *Id.* at 455–57.

The court pointed out, however that "absent competent evidence to the contrary, a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict." *Id.* at 457. There is no dispute in the case at bar as to the particular acts committed by appellant. Count I alleged only two overt acts by him. The relevant testimony dealt primarily with face-to-face transactions between the couriers, Bandy and Norris, appellant Hicks, and Bolts. Because of the vicarious liability principle of conspiracy, there was no reason for the jury to ascertain, unanimously or otherwise, what particular statutory provision Bolts himself had conspired to violate, where the jury determined that he participated in the conspiracy to violate the Drug Act as alleged.