715 F.2d 843
 UNITED STATES of America, Appellee,
v.
David GOMBERG, Appellant.
UNITED STATES of America, Appellee,
v.
Harold LEVY, Appellant.
UNITED STATES of America, Appellee,
v.
Michelle D'AMICO, Appellant.
UNITED STATES of America, Appellee,
v.
Albert SPIELVOGEL, Appellant.
UNITED STATES of America, Appellee,
v.
Joseph DiSANTIS, Jr., Appellant.
 Nos. 82-1258, 82-1534, 82-1477 to 82-1479 and 82-1485.
 United States Court of Appeals,
Third Circuit.
 Argued April 28, 1983.
Decided Aug. 30, 1983.
Rehearing Denied Sept. 29, 1983.
 
 Thomas Colas Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellant Joseph DiSantis, Jr.
 Timothy J. Savage, Philadelphia, Pa., for appellant David Gomberg.
 Stephen Robert LaCheen, Philadelphia, Pa., for appellant Harold Levy.
 Philip J. LiVolsi, Berlin, N.J., for appellant Michelle D'Amico.
 Pamela W. Higgins, Higgins & Madden, Philadelphia, Pa., for appellant Albert Spielvogel.
 Judy L. Goldstein (argued), Asst. U.S. Atty., Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.
 Before WEIS and HIGGINBOTHAM, Circuit Judges, and BROTMAN, District Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In these appeals from drug convictions, we reject the defendants' contention that a count charging a conspiracy with two objectives was duplicitous. We also find no merit to the challenge that there was a variance between the conspiracy alleged in the indictment and the evidence produced at trial. We agree, however, that a defendant sentenced under the Comprehensive Drug Abuse Prevention and Control Act for engaging in a continuing criminal enterprise should not also receive separate sentences for conspiracy and the underlying predicate offenses. As to the defendant convicted of the continuing criminal enterprise, we remand for resentencing. The convictions and sentences of the other defendants are affirmed.
 
 
 2
 A six-count indictment charged Joseph DiSantis, Jr., David Gomberg, Albert Spielvogel, and Michelle D'Amico with violations of the Comprehensive Drug Act, 21 U.S.C. § 801 et seq. Count One charged all defendants with conspiracy under section 846 "to manufacture and distribute methamphetamine, and to distribute and possess with the intent to distribute phenyl-2-propanone." Harold Levy was charged in a separate indictment with participating in the conspiracy. The main indictment further alleged that defendants had violated various substantive provisions of the Act. In addition, DiSantis was charged with engaging in a continuing criminal enterprise, id. § 848.
 
 
 3
 The two indictments were consolidated for a jury trial which lasted thirteen days. Much of the evidence came from Ronald Raiton, a leader of the conspiracy who testified for the prosecution as part of a plea bargain. The jury found defendants guilty as charged, except that D'Amico was acquitted on one count.
 
 
 4
 Defendants raise numerous issues in these appeals, but after careful review we deem it necessary to discuss only a few of them in detail. The appendix to this opinion lists the remainder of the contentions, all of which we find without merit.
 
 
 5
 * Defendants contend that the indictment was duplicitous because the conspiracy count charges them with two separate offenses. They also argue there was a variance between the conspiracy charged in the indictment and the proof offered at trial.
 
 
 6
 Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed. 1 C. Wright, FEDERAL PRACTICE AND PROCEDURE § 142 (1982). According to defendants, Count One charges two separate conspiracies--one to manufacture and distribute methamphetamine, and another involving P2P. They rely on United States v. Starks, 515 F.2d 112, 116 (3d Cir.1975), where we instructed trial courts to require the government to elect between duplicitous charges at trial, or else suffer dismissal of the indictment.
 
 
 7
 Starks does not support the defendant's position. The single-count indictment in that case charged the defendants with conspiracy to extort and attempt to extort--two separate crimes. In contrast, the count at issue here charges defendants with only one crime: a conspiracy. Although the illegal agreement had two objectives, the count is not duplicitous. " 'The conspiracy is the crime, and that is one, however diverse its objects.' " Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942), quoting Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 (1919). See also W. LaFave and A. Scott, CRIMINAL LAW § 62 (1972) ("An agreement to commit several crimes is but one conspiracy."). Accordingly, we reject the defendant's duplicity attack.
 
 
 8
 We turn next to the variance argument. Defendants assert the proof at trial showed the existence of many different and unrelated conspiracies, and the spillover of evidence prejudiced them. They rely on Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), where the Supreme Court reversed the convictions of individuals who had been indicted as participants in a single conspiracy because the prosecution proved the existence of several unrelated schemes. See also United States v. Camiel, 689 F.2d 31 (3d Cir.1982). In reviewing the defendants' argument, we must examine the record to determine whether, viewed in the light most favorable to the government, there is sufficient evidence of a single conspiracy to support the verdict. United States v. Boyd, 595 F.2d 120, 123 (3d Cir.1978).
 
 
 9
 At trial, the government proved the existence of an international drug ring that grossed millions of dollars. In the summer of 1978, DiSantis made Raiton a partner in his methamphetamine laboratory in Plymouth Meeting near Philadelphia. The two men soon decided to expand production, and opened a new laboratory in Upper Darby. This facility was shut down after DiSantis and one of the chemists were arrested for narcotics possession, but DiSantis and Raiton later started another one in Bucks County and hired a different chemist. During this time, the partners employed Gomberg and Spielvogel, who formed sham companies to purchase the essential ingredients for methamphetamine, particularly P2P. Levy, an attorney who shared office space with the partners, was retained in an attempt to gain the release of a shipment of P2P seized by federal drug agents.
 
 
 10
 DiSantis and Raiton also arranged to have P2P brought into the United States from France and Germany. Some deliveries were sent to a sham company in Philadelphia; others were routed through Miami. In addition, Levy organized a forwarding company in Canada to import the European P2P and hold it for shipment into the Philadelphia area.
 
 
 11
 When the supply of P2P exceeded their own manufacturing needs, DiSantis and Raiton began to sell the chemical to other drug dealers. The partners hired D'Amico to assist Gomberg in making deliveries and collecting money. On one occasion, D'Amico siphoned P2P into smaller containers in a ruse to throw drug enforcement agents off the trail.
 
 
 12
 DiSantis and Raiton continued their mutual dealings even after the partnership was dissolved in late 1979. DiSantis kept the methamphetamine operation, and Raiton supplied him with P2P. During this time, Spielvogel was instrumental in smuggling P2P into the United States from the Bahamas. The entire operation was finally broken up after Raiton and one of his customers agreed to cooperate with the government in 1981.
 
 
 13
 These facts suffice to show the existence of a single conspiracy in which all defendants knowingly participated. A division of labor among conspirators in pursuit of a common goal does not necessitate a finding of discrete schemes. See United States v. Elam, 678 F.2d 1234, 1246-47 (5th Cir.1982); United States v. Boyd, 595 F.2d at 123. Moreover, the trial judge explicitly directed the jury's attention to the unitary conspiracy issue. See also United States v. Kenny, 462 F.2d 1205, 1217 (3d Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 233-34, 34 L.Ed.2d 176 (1972). He charged the jury: "What you must do is determine whether the single conspiracy charged in the indictment existed between two or more conspirators. If you find that no such conspiracy existed then you must acquit the defendants as to that charge.... In other words, to find a defendant guilty you must find that he was a member of the conspiracy charged in the indictment and not some other separate conspiracy." In applying these instructions to the evidence, the jury could reasonably find that defendants had all agreed to participate in one common drug enterprise.
 
 
 14
 In a related argument, defendants contend that the trial judge erred in refusing to instruct the jury that a defendant could be found guilty only if "he agreed to perform the two things charged, to manufacture methamphetamine and to distribute P2P." The jury was told instead that "one may become a member of a conspiracy without full knowledge of all of the details of the alleged unlawful scheme.... So if a defendant with an understanding of the unlawful character of a plan knowingly and willfully joins in an unlawful scheme on one occasion that is sufficient to convict him for conspiracy...."
 
 
 15
 These instructions were proper. The test for conspiracy is whether a defendant agreed to participate in an unlawful scheme, with knowledge of its "essential nature." Blumenthal v. United States, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). A conspirator need not know all the details of the enterprise, United States v. Boscia, 573 F.2d 827, 834 (3d Cir.), cert. denied, 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978), nor join in all its illegal objectives. See also United States v. Murray, 618 F.2d 892, 898 (2d Cir.1980); United States v. Carman, 577 F.2d 556, 567 (9th Cir.1978); United States v. Bolts, 558 F.2d 316, 325-26 (2d Cir.), cert. denied, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977).[1]
 
 
 16
 Finally, some defendants contended at trial that their participation in the conspiracy ended before P2P was listed as a controlled substance in February 1980. They attack their convictions on the ground that the jury might have found that their roles were limited to possessing and distributing P2P at a time when it was not illegal to do so.
 
 
 17
 The limiting instruction given by the trial judge met the defendants' objection. The jury was told that a conspiracy merely to deal in an uncontrolled substance was not illegal. The judge carefully explained that a defendant implicated "solely in the possession, importation or distribution of P2P before that time [February 1980]" could not be found guilty, "unless he knew that the P2P was to be used in the manufacture of methamphetamine ... and ... he joined the conspiracy with the intent of aiding the conspiracy to carry out that illegal purpose." This limiting interpretation of the conspiracy did not amount to an improper amendment of the indictment, see United States v. Milestone, 626 F.2d 264 (3d Cir.), cert. denied, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980), nor did it deny defendants notice of the crime charged.
 
 
 18
 In short, we find no reversible error on the conspiracy convictions.
 
 II
 
 19
 DiSantis argues that he was sentenced improperly on Counts Two through Five. After being found guilty on all counts, he received the following sentences:
 
 
 20
 COUNT VIOLATION SENTENCE
 I Conspiracy to manufacture and
 distribute methamphetamine, and to Five years imprisonment and a
 distribute and possess with the $15,000 fine
 intent to distribute P2P; 21 U.S.C.
 § 846
 II Manufacture of methamphetamine; 21
 U.S.C. § 841 and 18 U.S.C. § 2 Five years imprisonment,
 followed by five years special
 parole, and a $15,000 fine;
 consecutive to Count I
 III Possession with the intent to
 distribute methamphetamine; id. Five years imprisonment,
 followed by five years special
 parole, and a $15,000 fine;
 consecutive to Count II
 IV Aiding and abetting the manufacture
 of methamphetamine; id. Five years probation; consecutive
 to Count III
 V Attempt to possess with the intent to
 distribute P2P; 21 U.S.C. § 846 Five years probation; concurrent
 with Count IV
 VI Continuing criminal enterprise; id.
 § 848 Ten years imprisonment;
 concurrent with Counts I and II
 
 
 21
 In sum, DiSantis was sentenced on the conspiracy and substantive counts to a $45,000 fine and fifteen years in prison, followed by five years of special parole and five more years of probation. He also received a concurrent ten-year term for the section 848 continuing criminal enterprise count.
 
 
 22
 In United States v. Gomez, 593 F.2d 210, 212 (3d Cir.), cert. denied, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979), we observed that the Comprehensive Drug Abuse Prevention and Control Act separates the various acts that establish criminal liability into discrete components. Correspondingly, "the penalty provisions of the Act have been orchestrated in meticulous detail." Id. at 213. The severity of the allowable sentences depends in part upon the type of drug, the intended use, the defendant's prior convictions, and the age of the consumer.
 
 
 23
 The Act makes conspiracies subject to punishment separate and apart from the substantive offenses. 21 U.S.C. § 846. In addition, section 848 imposes severe, separate penalties on individuals who engage in continuing criminal enterprises.[2] This section reaches individuals found guilty of felonies that are committed as part of a continuing series of violations of the Act. The defendant must reap substantial gain from these offenses, and undertake them in concert with five or more other persons whom he oversees in a managerial capacity.
 
 
 24
 Section 848 subjects first offenders to mandatory prison terms ranging from ten years up to life. A defendant may also be fined as much as $100,000 and ordered to forfeit the profits obtained from the enterprise. No sentence may be suspended, and probation and parole are prohibited.
 
 
 25
 The evidence in this case amply supports the verdict against DiSantis on all counts, and the ten-year sentence on Count Six is the minimum provided by section 848. Defendant argues, however, that Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), requires us to vacate his sentences on Counts One through Five as cumulative to the penalty imposed on him for the continuing criminal enterprise.
 
 
 26
 We begin by considering how Jeffers bears on the sentence on Count One for conspiracy. In that case, a defendant was charged in one indictment with a conspiracy violating section 846, and in another with a continuing criminal enterprise violating section 848. After successfully resisting the government's motion to try the two charges together, he was convicted of conspiracy at the first trial and sentenced to fifteen years imprisonment plus a $25,000 fine. At the second trial, he was found guilty of engaging in a continuing criminal enterprise and given the maximum sentence of life imprisonment in addition to a $100,000 fine. This sentence was made consecutive to the first one.
 
 
 27
 The defendant in Jeffers argued that the second trial violated the ban against successive prosecutions for the same offense. He contended that for double jeopardy purposes a section 846 conspiracy is a lesser included offense of a section 848 continuing criminal enterprise.
 
 
 28
 A divided Supreme Court rejected the defendant's double jeopardy claim. Four members of the Court reasoned that the defendant's opposition to a consolidated trial waived any viable defense to consecutive prosecutions for the same offense. Justice White concurred in affirming the section 848 conviction, but on different grounds.
 
 
 29
 In discussing the double jeopardy issue, the plurality opinion by Justice Blackmun assumed arguendo that conspiracy is a lesser included offense of a continuing criminal enterprise. Id. at 149-50, 97 S.Ct. at 2215. The plurality clearly stated, however, that it was not deciding this issue: "[B]efore this case it was by no means settled law that § 846 was a lesser included offense of § 848.... Even now, it has not been necessary to settle that issue definitively." Id. at 153 n. 20, 97 S.Ct. at 2217 n. 20.
 
 
 30
 The plurality then considered whether Congress intended to permit cumulative punishments under sections 846 and 848. Justice Blackmun noted that this multiple punishment issue would arise even if the two indictments had been tried together, id. at 154 n. 23, 97 S.Ct. at 2218 n. 23, thus treating the situation like the trial of Counts One and Six in the case at hand. Although he found the legislative history "inconclusive", id. at 156, 97 S.Ct. at 2219, Justice Blackmun observed that the usual policy offered in support of separate punishments for a conspiracy and its underlying substantive offenses does not apply to these two provisions. The additional dangers posed by section 846 conspiratorial activity are already encompassed by the "in concert" requirement of section 848, and "[t]hus, there is little legislative need to further this admittedly important interest by authorizing consecutive penalties from the conspiracy statute." Id. at 157, 97 S.Ct. at 2219.
 
 
 31
 Although the plurality recognized that the trial court had "the power to sentence [the defendant] to whatever penalty was authorized" by section 848, it concluded that the second fine imposed on the defendant must be reduced so that the total amount on the two convictions did not exceed $100,000--"the maximum permitted by § 848." Id. There was no need to consider the defendant's two prison sentences, however, since he was not eligible for parole at any time on the section 848 life term. Id. at 155 n. 24, 97 S.Ct. at 2218 n. 24. The four justices who dissented from the affirmance of the section 848 conviction on the ground that it violated double jeopardy concurred in the judgment to the extent that it vacated the cumulative fines.
 
 
 32
 Because of the diverse views espoused by the justices, Jeffers holds only that a defendant found guilty of both a section 846 conspiracy and a continuing criminal enterprise may not be fined in excess of the maximum authorized by section 848. This narrow holding does not dictate that we vacate the prison term imposed on DiSantis for conspiracy.[3] Nevertheless, like the plurality in Jeffers, id. at 156 n. 26, 97 S.Ct. at 2219 n. 26, we discern a congressional intent against cumulative punishment in the structure of the Comprehensive Drug Abuse Prevention and Control Act itself.
 
 
 33
 By authorizing life imprisonment without parole, the most severe sentence short of execution that can be imposed, Congress provided the courts with expansive power to punish a defendant who engages in a continuing criminal enterprise. There are substantial economic sanctions as well. As mentioned earlier, section 848 authorizes the trial court to fine a defendant up to $100,000 and strip him of his profits and interests in the enterprise. To pyramid an additional sentence for conspiracy, whether a prison term or a fine, would "undermine and distort the detailed penalty scheme which Congress so carefully constructed" in the Act. United States v. Gomez, 593 F.2d at 214. Our review of the statute persuades us, therefore, that Congress did not intend the courts to impose a penalty for a section 846 conspiracy in addition to the section 848 sentence.
 
 
 34
 Since DiSantis also attacks his sentences on Counts Two through Five, we must decide whether the ban on cumulative sentencing applies as well to the substantive drug offenses used as predicates for a continuing criminal enterprise charge.[4]
 
 
 35
 The Supreme Court did not consider this question in Jeffers, and the courts of appeals are not in agreement. Much of the confusion in the appellate opinions results from a failure to recognize that the holding in Jeffers is limited to the relationship between a continuing criminal enterprise and conspiracy, and that the Court did not decide the lesser included offense issue. Nor do the cases always respect the distinction in double jeopardy analysis between successive prosecutions and multiple punishments.[5]
 
 
 36
 In North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the Supreme Court observed that the fifth amendment guarantee against double jeopardy forbids three separate evils: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. Under the test established in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932), two offenses are the same for double jeopardy purposes unless each one requires proof of a fact that the other does not. The Blockburger test always deems a lesser included offense the same as the greater because by definition the greater offense includes all the elements of the lesser. By their nature, the predicate violations in a compound statute like section 848 are lesser included offenses.
 
 
 37
 At the time Jeffers was written, however, the Court had become equivocal about whether the double jeopardy clause offers independent protection against cumulative punishment. In later cases, a clear majority finally emerged for the proposition that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, --- U.S. ----, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the propriety of cumulative sentencing is entirely a legislative matter, and the lesser included offense rationale is often a misleading way to discern congressional intent in predicate offense statutes.
 
 
 38
 The Blockburger test still may be used to ascertain the legislative aim when it is not otherwise expressed, since congress ordinarily does not intend to punish the same offense under two different statutes. See Whalen v. United States, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). But as Justice Rehnquist pointed out in his Whalen dissent, the Blockburger test is "less satisfactory, and perhaps even misdirected, when applied to statutes defining 'compound' and 'predicate offenses.' " Id. at 708, 100 S.Ct. at 1446. In these situations, Blockburger should be used with caution, bearing in mind that the question to be resolved is legislative intent, not double jeopardy. If the congressional purpose as to cumulative punishment can be discerned from the language of the statute, its structure, or its legislative history, then the inquiry is at an end. See Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981). Recourse to the Blockburger test is appropriate only if these sources fail.
 
 
 39
 We need not resort to Blockburger here. As we see it, the structure of the Act, with its series of graduated penalties culminating in the extremely harsh punishment for continuing criminal enterprises, shows that Congress intended the courts to rely on section 848 alone for sentencing purposes. Cumulative sentences on the underlying predicate violations are not necessary to carry out the congressional purpose of severely punishing the leaders of narcotic rings.
 
 
 40
 In short, we conclude that Congress did not intend a defendant found guilty of a continuing criminal enterprise to be punished as well for conspiracy and substantive predicate offenses. The DiSantis case must therefore be remanded for resentencing.
 
 
 41
 We are not unmindful of the practical problems that confront district judges in sentencing defendants like DiSantis. In United States v. Gomez, 593 F.2d at 213, we rejected the contention that a trial court should enter judgment of conviction on the most inclusive offense alone, and not on those counts for which cumulative sentences are forbidden. As we pointed out, a defendant might avoid all punishment for his crimes if an appellate court reversed the single conviction on the compound offense but would have upheld the convictions on the less inclusive counts. To avoid that possibility, we directed the district court to impose a general sentence on all counts for a term not exceeding the maximum possible sentence on the count authorizing the greatest penalty. Id. at 216-17. See United States v. Corson, 449 F.2d 544 (3d Cir.1971); see also Zant v. Stephens, --- U.S. ----, ---- and n. 21 103 S.Ct. 2733, 2746 and n. 21, 77 L.Ed.2d 235 (1983).
 
 
 42
 One of the concerns expressed in Gomez was that on remand the double jeopardy clause might prevent the trial judge from imposing a greater sentence on the remaining counts than he had originally ordered. 593 F.2d at 217 n. 18. Since then, we held in United States v. Busic, 639 F.2d 940, 950 (3d Cir.), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981), that the Constitution does not forbid a district court from resentencing a defendant de novo and imposing a more severe sentence if it so chooses.[6] To avoid the necessity for remands, the general sentencing procedure recommended in Gomez should be followed in cases where a defendant convicted under section 848 is also found guilty of conspiracy or substantive offenses.
 
 
 43
 All of the defendants' convictions will be affirmed, as will all of the sentences except those imposed on Joseph DiSantis, Jr. His case will be remanded to the district court for imposition of a general sentence consistent with this opinion.
 
 APPENDIX
 
 44
 The following contentions, reproduced verbatim from the defendants' briefs, are rejected as without merit. All defendants adopt each others' arguments to the extent they are applicable.
 
 
 45
 David Gomberg, appellant in Nos. 82- 1258/1534:
 
 
 46
 --The joinder of the defendant with co-defendants against whom the government had voluminous evidence of crimes unrelated to the defendant was prejudicial and impermissible.
 
 
 47
 --The second trial of the defendant on charges arising from the same drug conspiracy violated the double jeopardy clause.
 
 
 48
 --The charges of manufacturing and aiding and abetting the manufacturing constituted a single continuous offense and convictions on both charges constitute double punishment.
 
 Harold Levy, appellant in No. 82-1477:
 
 49
 --Appellant should have been afforded relief for the government's conduct in making a material witness unavailable to him.
 
 
 50
 --Appellant should have been permitted to subpoena at trial records of the Internal Revenue Service, the U.S. Probation Office, and the New Jersey state probation office concerning the government's chief witness.
 
 
 51
 --A letter referring to appellant should have been excluded from evidence as inadmissible hearsay.
 
 
 52
 --A mistrial should have been declared when the government rebutted appellant's closing remarks by way of pejorative and prejudicial remarks concerning appellant and appellant's counsel.
 
 
 53
 --The sentence imposed upon appellant was unduly harsh and so disparate when compared with sentences imposed upon other co-conspirators as to violate appellant's constitutional rights.
 
 
 54
 --The indictment should have been dismissed as a result of the government's misconduct in connection with the investigation of this case.
 
 
 55
 Michelle D'Amico, appellant in No. 82-1478:
 
 
 56
 --The defendant D'Amico was entitled to a new trial in light of the fact that the trial court erred in denying the defendant's motion for mistrial.
 
 
 57
 Albert Spielvogel, appellant in No. 82-1479:
 
 
 58
 --There was insufficient evidence upon which the jury could have returned a verdict of guilty as to Count Two and appellant's motion under Rule 29(c) was improperly denied.
 
 
 59
 --Convictions on Counts One and Two must be reversed due to the admission of evidence of other crimes which unfairly prejudiced the jury.
 
 
 60
 --The trial judge improperly refused to require the government to turn over Brady material and denied the defendant access to Brady material.
 
 
 61
 Joseph DiSantis, Jr., appellant in No. 82-1485:
 
 
 62
 --Appellant's conviction on Count 1, the conspiracy count, should be reversed because of erroneous jury instructions and because one of the objectives of the conspiracy, distribution of phenylacetone, is not a federal crime due to its placement on controlled substances Schedule II through defective administrative procedure.
 
 
 63
 --The convictions on Counts 2 and 3 should be vacated and the case remanded for either dismissal or a new suppression hearing due to the grossly negligent, and possible willful, misrepresentation by the prosecutor to the court and defense concerning a material issue of fact at the suppression hearing.
 
 
 64
 --Appellant's conviction and sentence for manufacture of methamphetamine on Count 4 must be vacated because it is the same manufacturing offense charged in Count 2; such single offense was divided into two separate counts by reference to arbitrary temporal limits, not proper units of prosecution under 21 U.S.C. § 841.
 
 
 65
 --Appellant's conviction on Count 5 must be reversed due to the doctrine of legal impossibility.
 
 
 66
 --The Count 6 continuing criminal enterprise conviction should be reversed: (1) due to the doctrine of collateral estoppel which barred admission of cocaine conspiracy activities which, in part, were the subject of appellant's earlier federal acquittal of conspiracy to deliver cocaine; (2) the uncharged cocaine transactions were not part of the "continuing series of violations" charged in this indictment; (3) some or all of the predicate offenses are flawed and jury's general verdict on Count 6 could have been based on a flawed predicate.
 
 
 
 *
 The Honorable Stanley Seymour Brotman, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 In the case at hand, the government proceeded on the theory that a person who joins a conspiracy having two unlawful aims is guilty even if he agrees to only one of them. Defendants complain that the trial judge concurred with the government on this point at a side bar conference. However, they cite no authority to show that this view of the law is wrong, and the Murray, Carman and Bolts cases indicate otherwise. In any event, the judge did not instruct the jury on the "one-is-enough" theory, and therefore the defendants' complaint is without substance
 
 
 [2]
 Section 848 provides in part:
 "(a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).
 * * *
 (b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if--
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources."
 Section 848(c) prohibits suspension of sentence, probation and parole.
 
 
 [3]
 Jeffers has often been cited inaccurately as holding that a conspiracy is a lesser included offense of a continuing criminal enterprise. See, e.g., United States v. Barnes, 604 F.2d 121, 156 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Some cases have even construed this purported holding as requiring that a conviction and sentence under section 846 must be set aside when the defendant is also found guilty at the same trial of violating section 848. See United States v. Smith, 690 F.2d 748, 750 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); United States v. Lurz, 666 F.2d 69, 75, 81 (4th Cir.1981), cert. denied, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); United States v. Johnson, 575 F.2d 1347, 1354 (5th Cir.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979). In these three cases, the government conceded that this interpretation of Jeffers was correct
 
 
 [4]
 The trial judge charged the jury on Count Six that the government must prove defendant committed three or more of the offenses charged in Counts Two, Three, Four or Five as part of a continuing series of violations of the federal drug laws. Since defendant was found guilty on all of these counts, we need not decide whether conviction on three or more substantive offenses is necessary for conviction under § 848. Compare cases collected in United States v. Lurz, 666 F.2d 69, 78 (4th Cir.), cert. denied, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982), with those collected in United States v. Michel, 588 F.2d 986, 1000 n. 15 (5th Cir.), cert. denied, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979)
 
 
 [5]
 See, e.g., United States v. Smith, 690 F.2d 748, 750 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983) (relying on Jeffers to reverse conviction under § 846 as lesser included offense of § 848, but affirming without discussion conviction on substantive counts); United States v. Chagra, 669 F.2d 241, 261-62 n. 30 (5th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982) (vacating § 841 fine as cumulative to § 848 fine, as required by "[t]he discussion of Congressional intent in Jeffers"); United States v. Chagra, 653 F.2d 26, 32 (1st Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982) (citing Jeffers for proposition that the legislative "history might suggest an intent not to punish for both the § 848 violation and the offenses used to prove that violation"); United States v. Barnes, 604 F.2d 121, 155-56 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980) (relying on Jeffers as authority against imposition of penalty for conspiracy on defendant given maximum sentence on § 848, but affirming additional sentence for substantive offenses); United States v. Valenzuela, 596 F.2d 1361, 1364-65 (9th Cir.), cert. denied, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979) (rejecting argument that Jeffers requires court to vacate prison sentences for conspiracy and predicate offenses imposed on defendant who also received life imprisonment under § 848); United States v. Johnson, 575 F.2d 1347, 1354 (5th Cir.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979) (citing Jeffers as authority against consecutive sentences on §§ 846 and 848, but affirming without discussion additional prison terms for substantive violations)
 
 
 [6]
 As part of an overall sentencing plan for the defendants in Busic, the district court distributed the heaviest penalties on the counts that were later reversed, and imposed lighter punishments on the other counts. We remanded for resentencing on the counts that were upheld, without limiting the trial judge to the prison terms he had originally assessed. Since the maximum penalty provided by statute on the surviving counts made it impossible for the sentence on remand to exceed the total previously imposed, we did not have to decide whether the new aggregate sentence may be greater than the original one. 639 F.2d at 953 n. 14