[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 10 2008
THOMAS K. KAHN
CLERK

----------------------------------------

No. 06-15330
Non-Argument Calendar

----------------------------------------

D.C. Docket No. 03-00648-CR-WBH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRON VASSELL VERNON,

Defendant-Appellant.

----------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

----------------------------------------

**(January 10, 2008)**

Before EDMONDSON, Chief Judge, ANDERSON and CARNES, Circuit Judges.

PER CURIAM:

Defendant-Appellant Terron Vassell Vernon appeals his convictions for conspiracy to interfere with interstate commerce by robbery, 18 U.S.C. § 1951, aiding and abetting in causing death during a bank robbery, 18 U.S.C. §§ 2113(a), (d), (e), and 2, and possessing a firearm in furtherance of a crime of violence resulting in death, 18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1), and 2. No reversible error has been shown; we affirm.

Vernon first challenges the district court's denial of his motion to suppress a notepad seized from his prison cell while he was in pretrial detention. A district court's denial of a motion to suppress is ordinarily reviewed under a mixed standard. United States v. Garcia-Jaimes, 484 F.3d 1311, 1320 (11th Cir. 2007), petition for cert. filed, (U.S. June 11, 2007) (06-11863). Therefore, we review the district court's findings of fact for clear error and its application of law to those facts de novo. Id. But because Vernon did not object to the magistrate judge's report and recommendation on his motion to suppress, our review of the magistrate's factual findings is only for plain error. Id.

Here, during a routine inspection of Vernon's cell, a corrections officer noticed that Vernon had more than the permitted number of notepads. The corrections officer confiscated the excessive notepads. Some of the notepads were

blank; but at least one of the seized notepads contained Vernon's writings.[1]

Vernon asserts that he had a legitimate expectation of privacy in the personal property in his cell during his pretrial detention and that, in considering his motion to suppress, the district court should have balanced his right to privacy against the institutional need for safety and sanitation in seizing the excess notepads.

The district court did not err in denying Vernon's motion to suppress the contents of the notepad seized from his cell.[2] In Hudson v. Palmer, 104 S.Ct. 3194 (1984), the United States Supreme Court explained the scope of a prisoner's legitimate expectation of privacy in this way:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

Id. at 3200; see also Padgett v. Donald, 401 F.3d 1273, 1278 (11th Cir. 2005) ("Prisoners have no Fourth Amendment rights against searches of their prison cells . . . ."). Vernon had no legitimate expectation of privacy to the contents of

---

[1] A message about taking a life was written on the first page of one of the seized notepads.

[2] To the extent that Vernon argues that prison officials did not comply with institutional procedures in searching his cell and seizing his notepads, we reject this argument. Vernon cites no authority supporting the claim that prison regulations create a constitutional entitlement under the Fourth Amendment; and Vernon has not specified how prison regulations were violated in this case.

the notepads in his cell; and we affirm the denial of Vernon's motion to suppress evidence seized from his cell.[3]

We next address Vernon's assertion that the district court deprived him of his Sixth Amendment right to confront a witness at trial. Vernon contends that the district court erred in not permitting Bobbi Steger to testify as a witness.

At trial outside of the presence of the jury, the district court asked the parties whether they believed that Steger would invoke her Fifth Amendment privilege against self-incrimination if she were called as a witness at Vernon's trial. Both the government and Vernon agreed that Steger would invoke her Fifth Amendment privilege; but Vernon asserted that invoking the Fifth Amendment at trial would have "some evidentiary value."

Although we review de novo a defendant's claim that the district court violated his Sixth Amendment confrontation rights, we will reverse the district court only for harmful error. See United States v. Mills, 138 F.3d 928, 937, 941 (11th Cir. 1998). We see no error in the district court's refusal to allow Vernon to

---

[3]Vernon relies on Bell v. Wolfish, 99 S.Ct. 1861 (1979) -- a pre-Hudson decision -- to support his argument that pretrial detainees are protected by the Fourth Amendment against unreasonable searches of their cells and the seizure of personal items. In Bell, the Supreme Court assumed -- without deciding -- that a pretrial detainee had a diminished expectation of privacy and then concluded that unannounced searches of inmate living areas were still constitutionally permitted. 99 S.Ct. at 1883. Even if we were to assume that Vernon had a diminished expectation of privacy in his cell, the routine search of his cell and the seizure of his excessive notepads were not unreasonable.

call a witness who would invoke her Fifth Amendment privilege against self-incrimination at Vernon's trial. See United States v. Beechum, 582 F.2d 898, 908 (5th Cir. 1978) (en banc); see also United States v. Bolts, 558 F.2d 316, 324 (5th Cir. 1977) (explaining that defendant "has no constitutional right to compel [witness] to take the stand and testify when it was known in advance that [witness] intended to assert the fifth amendment privilege" and rejecting defendant's argument "that he should have been able to elicit from [witness] on the stand and in the jury's presence her exercise of privilege").[4]

We affirm Vernon's convictions.

AFFIRMED.

---

[4]In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before 1 October 1981.